529 A.2d 508

**Christopher DeWALT**

v.

**Duane DeWALT, Appellant.**

Superior Court of Pennsylvania.

Argued April 28, 1987.

Filed.July 29, 1987.

Thomas C. Panian, Robert Clarke, Washington, for appellant.

Clayton G. Nestler, Washington, for appellee.

Before CIRILLO, President Judge, and MONTEMURO and TAMILIA, JJ.

CIRILLO, President Judge:

This is an appeal from an order of the Court of Common Pleas of Washington County attaching the wages of appellant, Duane DeWalt.

Christopher DeWalt filed suit against his father, Duane DeWalt, for child support. The trial court ordered the father to pay $100 per month and attached his wages for that purpose. He then appealed to this court.

The court order which attached DeWalt's wages is dated October 6, 1986. It was entered on the docket that same day but DeWalt did not file a notice of appeal until November 6, thirty-one days after entry of the order. Pa.R.A.P. 903 provides that an appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken." Rule 108(b) defines the date of entry of an order in a matter of this kind as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given...." *See Lyday v. Lyday*, 360 Pa.Super. 16, 19, 519 A.2d 967, 969 (1986) (court held that the thirty-day appeal period begins to run when notice of the court's order is mailed to the parties). In this case, notice of the October 6th order was mailed on October 14. Therefore, the appeal of November 6 was within thirty days and was proper.

Appellant presents three issues for our review: (1) whether the support order imposes an undue hardship upon him; (2) whether the order is based upon erroneous information; and (3) whether the case must be remanded for clarification of the trial court's order.

■ On appeal, a child support order will not be disturbed unless the trial court committed an abuse of discretion. *Kopp v. Turley*, 359 Pa.Super. 106, 109, 518 A.2d 588, 590 (1986). An abuse of discretion is more than an error of judgment. It must be a misapplication of the law or an unreasonable exercise of judgment. *Id.*, 359 Pa.Superior Ct. at 109, 518 A.2d at 590.

■ The legal standard which controls a parent's obligation to pay child support varies based upon the child's age. A parent has a stringent obligation to support a child aged 18 or less. *Sutliff v. Sutliff*, 339 Pa.Super. 523, 547, 489 A.2d 764, 776 (1985). Child support is the shared responsibility of each parent. *Leonard v. Leonard for and*

*on Behalf of Leonard,* 353 Pa.Super. 604, 608, 510 A.2d 827, 829 (1986). This does not mean that each parent must pay an equal amount. They must discharge their obligation in accordance with their individual capacity and ability. *Id.,* 353 Pa.Superior Ct. at 609, 510 A.2d at 829.

■ In order to calculate the support obligation of each parent, the court must first determine the reasonable needs of the children. *Reitmeyer v. Reitmeyer,* 355 Pa.Super. 318, 324, 513 A.2d 448, 452 (1986). Reasonable expenses are not limited to the bare necessities. A child is entitled to a reasonable standard of living based upon the social station, fortune and financial achievements of their parents. *Commonwealth ex rel. Stump v. Church,* 333 Pa.Super. 166, 172, 481 A.2d 1358, 1361 (1984).

■ The court must next determine the respective abilities of the parents to support their children. To arrive at this amount, the court must make an allowance for the reasonable living expenses of each parent. The court must then calculate the parent's net income or earning capacity if that figure differs from actual income. *Lyday* at 21, 519 A.2d at 970. The trial court must consider every aspect of a parent's financial ability to pay support. The actual and potential cash flow from his property interests, financial resources, stock holdings and other investments should all be considered. *Id.*

In *Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d 991 (1984), a plurality of our Supreme Court, per Justice Larsen, established guidelines for the calculation of child support awards. *Id.,* 505 Pa. at 472–75, 480 A.2d at 996. Justice Larsen's formula provides:

A = amount available to parent A;
B = amount available to parent B

$$\frac{A}{A + B} \times \text{support needs} = \frac{\text{total support obligation of A}}{} - \text{in kind contribution} = \text{actual support obligation of A}$$

$$\frac{B}{A + B} \times \text{support needs} = \frac{\text{total support obligation of B}}{} - \text{in kind contribution} = \text{actual support obligation of B}$$

However, a majority of the Court eschewed strict mechanical formulas and endorsed a flexible approach in these cases. *Id.*, 505 Pa. at 477–78, 480 A.2d at 999 (Flaherty and Hutchinson, JJ. concurring).

A majority of the Court did agree that each parent's support obligation should be determined based upon the reasonable needs of the children and the parent's reasonable expenses and earning capacities. The members of the Court differed over whether these criteria should be applied via a mathematical formula or whether we should trust in the judgment and discretion of our trial courts.

In interpreting *Melzer*, the Superior Court has adhered to a middle course. We have recognized the validity of the *Melzer* formula but at the same time we have remained aware of the majority's admonition that the formula should not be inflexibly applied. Therefore, we have required trial courts to calculate the *Melzer* formula but we have allowed them to adjust the resulting support obligation if deviation from the formula is warranted under the particular circumstances. *Riess v. Deluca*, 353 Pa.Super. 622, 625, 510 A.2d 1239, 1241 (1986); *Reitmayer v. Reitmayer*, 355 Pa.Super. 318, 324, 513 A.2d 448, 452 (1986).

 A parent's duty to support his minor child is nearly absolute and the amount of time spent together has no bearing on the obligation. Even a parent who never sees his children has a duty to support them. *Melzer*, 505 Pa. at 472, 480 A.2d at 996. Though the parent-child relationship is the basis of this duty, a parent may not be released from this obligation by the actions of the child. A minor child

cannot waive his right to support. This is so even if he renounces the parent and refuses to see him. *See Schmidt v. Schmidt*, 313 Pa.Super. 83, 87, 459 A.2d 421, 423 (1983); *See also* 59 Am.Jur.2d Parent and Child § 67 (1971).

■ This obligation is unaffected by the independent resources of the child. As long as a parent is able to support his minor child, the child should not be forced to use his own funds to support himself. *Sutliff*, 339 Pa.Super. at 538, 489 A.2d at 771.

A parent's obligation to support a child over the age of eighteen is a more complicated matter.

As this court has stated:

[T]he presumption is when a child reaches majority the duty of the parent to support that child ends. Once the presumption arises, it is then incumbent upon the child to rebut the presumption. The duty to support the adult child continues where the child is physically or mentally feeble or otherwise unemployable. The adult child, however, has the burden of proving the conditions that make it impossible for her or him to be employed.

*Verna v. Verna*, 288 Pa.Super. 511, 515, 432 A.2d 630, 632 (1981) (citations omitted).

Because this duty is based upon the child's inability to be self-supporting, the court may consider the child's income in fashioning its award. The parent is only called upon to aid the child if he cannot aid himself. To the extent that he can aid himself, the parental contribution is unnecessary. The "reasonable needs" of a disabled adult child are those needs which he is unable to meet through his own efforts.

This obligation to support a child who is mentally or physically defective is not diminished even if the child refuses to see the parent. *Schmidt*, 313 Pa.Super. at 87, 459 A.2d at 423. The attainment of majority does not destroy the natural relationship between a parent and a child. If the child refuses to see the parent, that relationship may exist only in name. Even so, society will not allow a parent to turn his back on the child. Society will not step

in and care for the child if the parent is capable of providing support. The parent's legal obligation arises from his moral responsibility to care for the child whom he brought into the world. This responsibility may be unpleasant if the disabled child is ungrateful. However, a parent's interest in avoiding this distasteful and bitter reproach is outweighed by the societal interest in preventing such children from becoming a public burden.

Still another situation is that of the adult child who wishes to pursue a post-high school education. In *Lederer v. Lederer*, 291 Pa.Super. 22, 435 A.2d 199 (1981), the court wrote:

> It is settled law in Pennsylvania that in absence of an agreement to educate "a father has no duty to aid in providing a college education for his child, no matter how deserving, willing or able a child may be, unless the father has sufficient estate earning capacity or income to enable him to do so without undue hardship to himself." *Emrick v. Emrick*, 445 Pa. 428, 430–431, 284 A.2d 682 (1971); *Hutchison v. Hutchison*, 263 Pa.Super. 299, 300, 397 A.2d 1218, 1219 (1979). However, a support order may be entered against a parent for a child's college education, even in the absence of an agreement to support the child past the age of eighteen, as long as this obligation would not result in undue hardship to the parent. *Brake v. Brake*, 271 Pa.Super. 314, 413 A.2d 422 (1979).

*Id.*, 291 Pa.Superior Ct. at 24–25, 435 A.2d at 200–01.

The child in question must also possess the aptitude and the desire to successfully complete the course of studies he has chosen to pursue. *Kopp* at 110, 518 A.2d at 590.

■ Unlike the above-described situation concerning a disabled child, this responsibility is not based upon the child's inability to support himself. However, we recognize that many children contribute to the cost of their own education. Therefore, trial courts may consider an adult child's current earnings when determining the parent's support obligation for post-high school education expenses. A

court should fashion its award based upon the contributions made by children of parents with similar financial resources. A child's college years should not be destroyed by slavish labor because his parents have chosen to divorce. On the other hand, a parent should not be required to devote every waking moment to the pursuit of monetary gain so a child may spend his summers employed only in the pursuit of a perfect tan.

▇▇ Unlike the disabled child, an adult child in college may forfeit his right to support by renouncing the parent-child relationship. As noted, this relationship is the source of a parent's support obligation. A minor child is incapable of effective renunciation because of his age. A disabled child is incapable of effective renunciation because of the societal interest in preventing dependance upon the public weal. Neither of these considerations apply to an adult child in college. He is mature enough to be held responsible for his actions. He is not disabled so it is unlikely that he will become a public dependant. Therefore, we see no reason why a child should be entitled to shun a parent's love and company but at the same time be allowed to greedily reach into their wallet. The law should not sanction such a cold-hearted result. See Cohen v. Schnepf, 94 A.D.2d 783, 463 N.Y.S.2d 29 (1983); Barbara M. v. Harry M., 117 Misc.2d 142, 458 N.Y.S.2d 136 (1982). A parent who has been cast aside by his child suffers the worst pain and heartache imaginable to man. If a child has no need for a parent and banishes him from his life, he in turn may be banished from the parent's checkbook. However, nothing of this kind occurred in the instant case.

▇▇ At trial, evidence was presented that the father earns $25,000 to $27,000 per year. Of his monthly expenses, approximately $100 per month goes to pay for a vacation home. The child earned approximately $700 to $800 during his summer vacation. Based on the foregoing, we do not believe the trial court abused its discretion in ordering the appellant to pay $100 per month for his child's college expenses.

One hundred dollars per month is hardly a princely sum. We do not wish to suggest that appellant should give up the luxury of paying for a vacation home. However, we note that a child does not ask to be brought into this world. That choice is made by parents such as appellant. A child is usually born of the best of intentions as a result of a romantic glow which colors the world with a rose tint. But for some persons, as the years pass, the world slowly turns grey and the child becomes an irritant or a burden from whom they would like to break free. However, our courts will not allow parental duties to be so casually cast asunder. Becoming a parent is a decision which carries with it great responsibilities, not all of them pleasant. The importance of a college degree is continually increasing in our fast-paced, complex, modern society. Forcing a parent to choose his child's education over his own vacation home is hardly tantamount to the imposition of an odious burden. The trial court acted within its discretion.

Appellant claims that his son presented erroneous information to a state agency when he applied for college aid. We are not persuaded of the truth of this allegation. However, even if true, this claim is of no import to the case before us. Incorrect information which was provided to the state does not affect the validity of a court order which was not issued in reliance on that information.

Lastly, appellant argues that this case should be remanded for clarification of the trial court's order. That order directs appellant to pay $100 per month towards his son's college education. The order is open-ended and will not lapse even after Christopher turns twenty-three. This is improper.

In *Brown v. Brown*, 327 Pa.Super. 51, 474 A.2d 1168 (1984), we stated that a parent's obligation to pay his child's college expenses may not be extended past the child's twenty-third birthday except in unusual cases. *Id.*, 327 Pa.Superior Ct. at 55, 474 A.2d at 1170. This is not an arbitrary number plucked indiscriminately from the judicial

hat. It is consonant with the policies underlying this parental obligation.

The duty to pay for a child's college education in certain circumstances results from a balancing of competing policies. The disadvantages forced upon children by their parents' divorce should be minimized. Parents who would have supported their child's education if they had not divorced, should not be encouraged to further victimize a child by leaving him without a college degree. However, this parental obligation is not limitless and does not extend into perpetuity. As discussed above, it is dependent upon a showing by the child that he is interested in pursuing his education. *Id.*, 327 Pa.Superior Ct. at 55–56, 474 A.2d at 1170.

By the age of twenty-three, a young adult will usually have had at least four years to complete his college education. If he has shown the requisite interest, he should have his degree in hand. If he has not demonstrated this commitment and has failed to take advantage of the opportunity given him, he has waived any right to complain about a lack of parental interest. As an adult, he must be prepared to accept at least this much responsibility. Of course, exceptional cases will arise where the circumstances are such that this rule should not be inflexibly applied. A child may be unable to complete his education in four years because his parent refused to pay support. If a support order is finally entered, it would hardly be fair to terminate the obligation before the child has received four full years of parental aid. A contrary result would reward the parent for his own intransigence. Likewise, a child may have been ill and unable to complete his course work in the usual time frame. Certainly, the law will not compound his suffering by refusing to consider these extenuating circumstances when determining the parental support obligation. But, this is not such an exceptional case.

Christopher will turn twenty-three in March of 1988. At that time, his father's support obligation must lapse. Be-

cause the trial court's order is open-ended it must be modified so that it is in accord with the applicable law.

Based on the foregoing, the order of the Court of Common Pleas of Washington County is hereby modified so that Duane DeWalt's support obligation ends in March of 1988.

MONTEMURO, J., concurs in result.