538 A.2d 552

**Marlene M. SCHEIDEMANTLE, Appellant at 1642,**

**v.**

**George J. SENKA, Appellant at 1643.**

Superior Court of Pennsylvania.

Submitted Sept. 3, 1987.

Filed Feb. 19, 1988.

Mark A. Criss, Zelienople, for Senka.

Before BROSKY, TAMILIA and KELLY, JJ.

TAMILIA, Judge:

The parties to this action are divorced parents of a college-aged daughter, Lynn Senka. Both parties have remarried since their divorce.

On August 30, 1985, with Lynn's consent, the plaintiff/mother filed a petition to modify support requesting on-going support for Lynn, who was then in college, and an increase in support for Lynn's minor brother. In October 1985, the court ordered the father to pay $350 per month for support of the two children ($175 each). The father filed exceptions on October 28, 1985, arguing the domestic relations hearing officer had totally ignored substantial evidence that Lynn was totally unprepared, unqualified and unfit to attend college and obtain a degree. A hearing de novo was held on December 9, 1985 and May 27, 1986 and, on July 3, 1986 (filed July 8, 1986, hereinafter referred to as Order of July 8, 1986), the court issued findings of fact and

conclusions on the question of whether father in this case has a legal duty to support his daughter in an institution of higher academic education when the facts seemed to indicate she might not have a reasonable chance of success in such a program.

The court concluded Lynn had failed to prepare herself for a college education and, based on her scholastic record, her father had no legal duty to contribute to an academic education for her at the college or university level. At the same time, the court concluded that both parents currently had earnings which would permit them to maintain Lynn in a state college without severe hardship. After reaching the foregoing conclusions, the trial court ordered the October 18, 1985 Order for support of Lynn Senka of $175 per month be rescinded as of November 1, 1985. Order of 7/8/86, p. 5.

Mother filed post-trial motions on July 22, 1986, urging error in the court's determination that because of Lynn's prior scholastic record, father has no legal duty to support Lynn while she attends college. Father filed preliminary objections to these post-trial motions, arguing mother was not a party to the action and thus lacked standing to file post-trial motions. The court issued a memorandum and Order on September 12, 1986, denying father's preliminary objections and, except for a correction to its July 8th Order, otherwise dismissing both mother and father's post-trial motions. Mother filed notice of appeal on October 10, 1986, from the September 12, 1986 Order. Father subsequently filed a notice of cross-appeal on October 23, 1986, also from the September 12, 1986 Order. Mother's argument to this Court is that the trial court erred in determining that Lynn is not academically fit to seek a college education, and consequently deciding father has no legal duty to pay support for Lynn's college pursuits. Father has appealed to argue that should this Court reverse the trial court and find Lynn academically fit, we should not then affirm the court's conclusion that he possesses sufficient income to make payments without incurring undue hardship.

Lynn enrolled in an elementary education course at Edinboro State University in August of 1985. At that time, she was an 18–year old graduate of Seneca Valley High School. While she was a senior at Seneca Valley, Lynn earned a C+ average; her grade average was, however, bolstered by A's she received in courses such as physical education, mass media, contemporary issues and family living. She received a D in English fundamentals and withdrew from geometry because she was doing poorly.

The results of Lynn's Scholastic Aptitude Test (S.A.T.) test, which she took in her junior year, do not prove her to be college material. She scored a 240 on the verbal section and a 320 on the math section. An expert witness, Dr. William Reed, filed a written report and testified at trial. Dr. Reed is a professional vocational rehabilitation specialist and is a member of the board of trustees of Point Park College in Pittsburgh, Pennsylvania. Dr. Reed testified that S.A.T. test scores range from 200 to 800 on each subtest, with an automatic score of 200 on each test for filling out the application appropriately. He further testified that 89 per cent of all college-bound students in Pennsylvania scored higher than Lynn did on the math section, and 96 per cent of all college-bound students in Pennsylvania did better than Lynn did on the verbal portion.

Nevertheless, Lynn was accepted by Edinboro State University during the summer of 1985. She testified she would have preferred to attend Indiana University of Pennsylvania, but they did not have dormitory space for her at the time she applied. Dr. Reed explained in his expert's report:

[I]t appears that non-educational factors enter into the decision for accepting students who are 'not college material'. Many of those other reasons seem to have an economic basis. Most colleges are in financial difficulty. They need the financial support of every student that they can get.

Defendant's Exhibit 3 at p. 5.

One year at Edinboro University caused Lynn to incur a bill of $3,975 for both fall and spring tuition and boarding costs, plus an additional $150 per term for books.

At Edinboro in 1985–1986, Lynn completed courses and received grades as follows:

### FALL TERM

| COURSE TITLE | GRADE |
| --- | --- |
| COLLEGE READING/STUDY SKILLS | B |
| CURRICULUM INSTRUCTION TECHNIQUES | B |
| BASIC WRITING SKILLS | S |
| HISTORY OF U. S. | W |
| MAN AND HIS MUSIC | D |

### SPRING TERM

| COURSE TITLE | GRADE |
| --- | --- |
| PHOTOGRAPHY 1 | D |
| COLLEGE WRITING SKILLS | C |
| HEALTH & HUMAN SEXUALITY | B |
| FOUNDATIONS OF MATH | B |
| INTRO TO PHILOSOPHY | C |

While she finished with a cumulative grade average of 2.22, her grades presumably would have been lowered by her history grade, had she not withdrawn. Lynn testified that she withdrew from the course well into the semester because she knew she was doing poorly (H.T. 5/27/86, p. 16). Lynn then made application to and was accepted by Indiana University of Pennsylvania for the 1986–1987 school year.

When she is not at college, Lynn resides with her mother, who has remarried, and is now Marlene M. Scheidemantle. Mrs. Scheidemantle's current husband, Wayne Scheidemantle, employs her at his school bus business, where she is a bus driver and performs office work. She testified that she normally earns gross income of $1,000 each month, for nine months of the year (H.T. 12/9/85, p. 12).

Lynn's father, George Senka, was at the time of trial employed by H–Technical Services, Inc., as a draftsman. His gross earnings for the period from January 1, 1985 to October 31, 1985, were $24,672; he netted $18,651.09 for that same period. When questioned at trial about his income, father testified he had earned $9,000 in 1983 and $19,000–$20,000 in 1984, over a nine month period. He

further testified his earnings fluctuate with the steel business since his drafting work is mostly for that industry.

On appeal, mother contends the trial court erred in determining that based on Lynn's scholastic record, father has no duty to contribute to an academic education for Lynn at the college or university level. Mother urges that Lynn has shown, by successful completion of one academic year at Edinboro University with a C+ average (based on a 4–point scale with a grade of C being a 2, we question whether a 2.2 is actually a C+ average), and by her acceptance at Indiana University of Pennsylvania, that she is able and willing to successfully pursue her course of studies. Additionally, she argues father has the ability to pay for Lynn's college without imposing an undue hardship on him. Father, however, appeals the trial court's determination that he has the ability to pay without incurring undue hardship.

Our standard of review is clear. "On appeal, a child support order will not be disturbed unless the trial court committed an abuse of discretion. An abuse of discretion is more than an error of judgment. It must be a misapplication of the law or an unreasonable exercise of judgment." *DeWalt v. DeWalt*, 365 Pa.Super. 280, 529 A.2d 508 (1987) (citing *Kopp v. Turley*, 359 Pa.Super. 106, 518 A.2d 588 (1986)). *See Brown v. Brown*, 327 Pa.Super. 51, 474 A.2d 1168 (1984).

In *DeWalt, supra*, we recognized:

It is settled law in Pennsylvania that in absence of an agreement to educate 'a father has no duty to aid in providing a college education for his child, no matter how deserving, willing or able a child may be, unless the father has sufficient estate earning capacity or income to enable him to do so without undue hardship to himself.' However, a support order may be entered against a parent for a child's college education, even in the absence of an agreement to support the child past the age of eighteen, as long as this obligation would not result in undue hardship to the parent.

The child in question must also possess the aptitude and the desire to successfully complete the course of studies he has chosen to pursue. (Citations omitted.) *DeWalt, supra* 365 Pa.Super. at 287, 529 A.2d at 512. *See Brown, supra.*

The trial court, after considering both father and mother's respective incomes, determined that sending Lynn to a state college would not place an undue hardship on them. The $4,000 amount which Edinboro State University charges for one full year's tuition and room and board is affordable to both father and mother. The trial court went on to find Lynn did not possess the aptitude to successfully complete the course of studies she had chosen to pursue.

■ Having carefully reviewed this record, we must quash the appeal without deciding the merits of the issue of entitlement to support for college education, as the appeal was untimely. As noted above, the final Order in this case, entered on July 8, 1986, was followed by a series of post-trial motions by both parties, hearings and a further "final" Order dated September 12, 1986 from which this appeal was taken. Pennsylvania Rule of Civil Procedure 1910.11 Office Conference. Subsequent Proceedings. Order, at subsection (k) provides: "(k) No Motion for Post–Trial Relief may be filed to the final order of support."

■ In this case, the final Order was entered on July 8, 1986, and notice of appeal was filed on October 10th by the mother, notice of cross-appeal was filed by the father on October 23, 1986. Pennsylvania Rule of Appellate Procedure 903(a) requires an appeal be taken in this case within thirty (30) days of the Order from which the appeal is taken. The lower court's acceptance of, and ruling on, the post-trial motions does not extend the time for filing of an appeal from the Order of July 8, 1986. Short of vacating that Order prior to thirty days from its entry to allow for reconsideration, the court had no jurisdiction thereafter to act on that Order and it was without authority to rule on post-trial motions as it was limited by Pa.R.C.P. 1910.11(k).

The fact we must quash this appeal does not, however, prevent the mother and child from seeking a modification of the Order of July 8, 1986, by virtue of a change in circumstance which would tend to establish the child's ability to successfully manage college training, despite the adverse finding of the court in this proceeding.[1]

Appeal and cross appeal quashed.

Jurisdiction relinquished.

BROSKY, J., filed a concurring opinion, joined by KELLY, J.

BROSKY, Judge, concurring:

I agree with Judge Tamilia that this appeal must be quashed as untimely. However, having reached this result, I believe we should refrain from further commentary on the case. Additional commentary could prove misleading to those concerned while lacking appropriate authority. Specifically speaking, I believe this to be the case with regard to the characterization of the lower court's findings in the majority opinion.

The majority opinion, at page 555, states: "the trial court went on to find that Lynn does not possess the aptitude to successfully complete the course of studies she has chosen to pursue." I am not convinced, upon reviewing the record, that the trial court made such a finding as to Lynn's aptitude. The trial court states among its conclusions:

. . . . .

2. Lynn failed to prepare herself for a college academic education. Her S.A.T. scores establish that *she may not* successfully pursue such a career.

---

1. By letter addressed to members of the panel, submitted without permission of the court, *see* Pa.R.A.P. 2501(a), counsel for appellant Marlene Scheidemantle conveyed information concerning Lynn's successful completion of her second academic year and acceptance to the third academic year. This information is not part of the record and cannot be a basis for our consideration. Appellant is not foreclosed from petitioning the trial court for reconsideration if the new information would warrant it.

3. Lynn is an attractive, articulate and apparently capable young woman who *may* succeed in doing what she now wants to do if that continues to be her state of mind.

(Emphasis added). Although the trial court expresses doubt as to the likelihood that Lynn will be successful in earning a degree, the court does not find that she is incapable of earning a degree.

Aptitude is tantamount to capability or capacity. Although this may sound like an overly technical distinction, I believe it is an important one. Even individuals with the highest of aptitudes sometimes fail to earn a degree. The reason they fail to successfully complete the course of study may be attributable to many factors, but all that can be said about their superior aptitude is that it makes them more likely to succeed than those with less aptitude. Conversely, even individuals with lesser aptitudes may indeed graduate, and the likelihood of this event increases as they come closer to completion of the course of study. I find this important because, inasmuch as I read the trial court's decision to refuse educational support as one based greatly upon the uncertainty of Lynn's eventual success, and a belief that a parent should not be ordered to help finance a risky, frivolous or imprudent venture, I would not wish to see the door closed upon a future attempt of Lynn's to demonstrate a greater likelihood of success which might then warrant an award of support, even for the course of study she is currently pursuing. Perhaps Lynn lacked sufficient motivation in high school to reach her potential, or, perhaps, her first two years of collegiate study have helped to remedy some of her academic deficiencies, or perhaps she is simply a "late bloomer." We are mindful that the great scientist, Einstein, who gave us the formula for the theory of relativity, had flunked mathematics in his youthful school years. However, if the trial court's determination is construed as one that Lynn does not possess the aptitude to complete the course of study she is currently pursuing, it could work against her in a future effort to

obtain support, in this field of endeavor or another, for although one may petition again for support based upon a new set of, or a change in, circumstances, one may not relitigate a previously decided fact or issue in the new proceedings. *Chrzanowski v. Chrzanowski*, 325 Pa.Super. 298, 472 A.2d 1128 (1984), *Dunbar v. Dunbar*, 291 Pa.Super. 224, 435 A.2d 879 (1981). Consequently, for the reasons stated above, I concur in the result reached by the majority.

KELLY, J., joins in this opinion.