## McCabe v. Krupinski

*Robert G. Leino,* for plaintiff.
*Frederic M. Wentz,* for defendant.

LOWE, *J.,* May 21, 1991—Following a hearing de novo convened March 19, 1991, the court entered an order dated April 9, 1991, directing defendant Paul Krupinski to pay support for the remainder of his daughter Lisa Krupinski's college education. This matter is now on appeal before the Superior Court of Pennsylvania.

Plaintiff Joyce McCabe and Father were married July 20, 1966, and two children were born of the marriage: Lisa, born December 20, 1967, and Michael, born August 31, 1970. Over the years, numerous vicissitudes have troubled the family. In June 1978 the parents were divorced; Mother obtained custody of the children, and Father tendered support payments on their behalf. Both Mother and Father have since remarried. Tragically, in 1985, while Lisa was a senior in high school, Michael died. Devastated by the loss of her brother, Lisa nevertheless finished her senior year in high school and matriculated at West Chester University in September 1986.

Meanwhile, emotional problems crippled Mother, and she ultimately suffered a nervous breakdown in 1987. She has been obliged to undergo psychiatric treatment at Norristown State Hospital and Eugenia Hospital. Likewise, Lisa has suffered from depression throughout her years at West Chester and she too has been obliged to undergo psychiatric treatment. Lisa's emotional problems have obliged her to carry a reduced class load some semesters thereby preventing her from graduating in four years. She is scheduled to graduate in June 1992.

This controversy concerns Father's obligations to pay Lisa's college expenses from December 1990

until she graduates. Through December 1990 Lisa had attended West Chester, either full-time or part-time, for four and one-half years, and Father willingly paid the vast majority of her college expenses. Father argues that because Lisa attained the age of 23 in December 1990, his obligation to pay her college expenses ceased. A hearing convened before Master in Support Matthew S. Santangelo on November 29, 1990, after which he recommended that effective December 1990 Father would no longer have to pay Lisa's expenses at West Chester. Mother filed exceptions to Master Santangelo's recommendations and a hearing de novo was subsequently convened before this court.

After carefully considering the testimony adduced at the hearing along with well settled Pennsylvania law, the court respectfully declined to adopt Master Santangelo's recommendations and ordered Father to pay support for the remainder of Lisa's college education. The court explicated its reasoning in its order dated April 9, 1991. To summarize the law upon which the court relied, a parent is not obligated to pay a child's college expenses beyond the child's 23rd birthday absent unusual and exceptional circumstances. *Griffin v. Griffin,* 384 Pa. Super. 188, 558 A.2d 75 (1989); *DeWalt v. DeWalt,* 365 Pa. Super. 280, 529 A.2d 508 (1987). Moreover, a parent's duty to support his child in college only arises if the child has demonstrated a willingness to pursue successfully a course of study, and the parent has sufficient means to contribute support without suffering undue hardship. *Sutliff v. Sutliff,* 515 Pa. 393, 528 A.2d 1318 (1987); *Napier v. Hutchinson,* 397 Pa. Super. 162, 579 A.2d 981 (1990).

Applying the law to the facts in the instant case, it is clear that Father must pay Lisa's remaining tuition and book expenses incurred at West Chester.

The divorce of her parents, the death of her brother Michael, and the nervous breakdown of her mother have severely traumatized Lisa, and these events constitute unusual and exceptional circumstances which have justifiably delayed her graduation from college. Furthermore, Lisa has performed satisfactorily in her studies at West Chester and is eager to earn her degree in secondary education. It is pertinent that she receives no financial aid and while attending college full-time works 30 hours a week in an effort to defray her expenses. Father has provided support for his stepdaughter's college education; providing support for the remainder of his daughter's college education will not impose an undue financial burden upon him.

Father raises four points in his appeal to the Superior Court. He argues in his first two points that Mother failed to present medical or psychiatric testimony to support her contentions that she suffered a nervous breakdown and that Lisa was severely traumatized by the divorce and Michael's death. Although no medical professionals testified at the hearing, Father Michael Dahulich, a priest who has counseled Lisa extensively, testified at length and unequivocally substantiated Mother's position. Most notably, Father Dahulich made these observations:

"[I began counseling Lisa in March 1988 and] at that particular time she was very distraught and she was sharing with me some of the problems that she had in her family life and her personal life, and that's when I began to see what her situation was . . . I would say the most significant thing that has bothered her is her brother's death, and obviously relevant to that are the breakup of her parents' marriage and then her mother's problems. . . . Lisa was very close to her brother. His death took that away from

her. She suffered from that loss. I don't know if she's ever really gotten over it. . . . When she went to [West Chester], she couldn't find someone there that was willing to talk about it, so she began to withdraw into herself. And I think that no doubt complicated her depression.

"In 1987 her mother had a nervous breakdown, [and] this past Christmas there was a confrontation between Lisa and her mother and I would reasonably assume that it was based on previous experience. [S]he came to me extremely distraught because she had had this problem, she was thinking she would have to move out of the house and then she began an outpouring of many of the things that had accumulated in her past, again relating to her brother and to her parents' divorce, and to her father not being there for her as she perceived it, and I would say that that would substantiate her inability to resolve the problems that she's had over the past few years.

"[In my judgment, the loss of time at college was occasioned by the family difficulty]: [h]er brother's death, her inability to get over that, and the problems that she has at home and her natural father being away from her and the situation."

The court found Father Dahulich to be an eminently credible witness and is convinced that he accurately summarized the woes which have afflicted Lisa's family and the degree to which her progress at West Chester has been delayed.

In his third point Father notes that when a child voluntarily drops courses causing her probable graduation from college to be extended one and one-half to two years after her 23rd birthday, a parent should not be obligated to continue to pay that child's college expenses. Father has omitted the key exception to this rule of law, as stated in *Griffin, supra* and

*DeWalt, supra;* a parent may be obligated to continue tendering payments for his child's college expenses notwithstanding the child's attainment of age 23 *if unusual and exceptional circumstances are present.* To repeat, the court adamantly holds that the vexing family problems with which Lisa has had to cope throughout her years at West Chester constitute unusual and exceptional circumstances.

Father concludes his appeal by making reference to a hotly contested item in the case; a $10,000 trust fund previously set aside by the parents for payment of Lisa and Michael's college expenses which was generated from the proceeds of a real estate sale. Father maintains that the trust funds have not yet been expended for payment of any part of Lisa's college expenses, and if Mother squandered these trust funds, she should be required to replace them for Lisa's benefit before the obligation is imposed on him for further payment of these expenses. To refute these allegations, Mother filed an affidavit in which she stated, inter alia, that this money was spent in 1984 on the children and for household expenses including mortgage payments, electric, water, insurance, medical bills, dental bills, food, and was spent as a result of Mother's illness and inability to work. Furthermore, Mother states that these monies have been totally spent, and the accounts have been closed out with zero balances. The court does not question the veracity of the statements contained in Mother's affidavit and therefore dismisses Father's final point.

In conclusion, it is beyond cavil that Lisa's rueful tale would evoke pathos in all but the most hardened heart. As the court observed at the hearing, "[Lisa] has done her level best to acquire a college education in the face of what could almost amount to overwhelming personal and family problems, and

she is to be commended for her perseverance." The end is now in sight for Lisa, who with limited resources has importuned Father to relieve the heavy financial burden with which she is faced. Father, who has been providing support for his stepdaughter's college education, has the means to continue paying Lisa's college expenses. Equity and justice oblige him to do so.

In view of the foregoing, the court's April 9, 1991, order should be affirmed.