J-A23031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARIE SULLIVAN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PHILIP MASORTI | : | |
| | : | |
| Appellant | : | No. 1347 MDA 2021 |

Appeal from the Order Entered September 22, 2021
In the Court of Common Pleas of Centre County Domestic Relations at
No(s): 2017-00206-S,
PACSES No. 088116242

| | | |
|---|---|---|
| PHILIP M. MASORTI | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARIE SULLIVAN | : | No. 1348 MDA 2021 |

Appeal from the Order Entered September 22, 2021
In the Court of Common Pleas of Centre County Domestic Relations at
No(s): 2020-00203S,
Pacses No. 125300630

BEFORE:   BOWES, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED OCTOBER 17, 2022**

Appellant Philip M. Masorti ("Husband") appeals from the order of the Court of Common Pleas of Centre County awarding Appellee Marie Sullivan ("Wife") both child support and spousal support. The order also dismissed

---

[*] Former Justice specially assigned to the Superior Court.

Husband's claim for spousal support as his imputed income exceeds Wife's income. After careful review, we affirm.

Husband and Wife were married in May 1995 and separated in September 2016. During the marriage, the couple had three children: Lucas, born in March 2000, Mariano, born in October 2001, and Esme, born in August 2007. Husband is an experienced attorney who has practiced criminal law since 1992. Husband's practice is focused on providing representation to students from the Pennsylvania State University (Penn State – State College campus) in such matters as DUI offenses and minor drug charges. Notes of Testimony (N.T.), 9/22/21, at 29, 31.

Wife, who is also a practicing attorney, previously worked for Husband's practice, but left his firm when their relationship ended. N.T. at 5. Wife has been employed full-time by Penn State since July 2017. N.T. at 5-6.

Initially, on July 5, 2017, Wife filed a complaint seeking spousal support and child support, but the matter was dismissed after the parties reached a private agreement. While Husband subsequently filed several complaints requesting support, all such matters were withdrawn.

On December 20, 2020, Husband filed another complaint seeking child support for all three children, two of whom were above the age of eighteen. On March 8, 2021, the trial court dismissed the complaint without prejudice as it found Husband had not proven entitlement when there was no income available for such support.

On April 26, 2021, Wife filed a complaint seeking child support for the couple's minor child, Esme. On June 8, 2021, Husband reinstated his complaint seeking support for all three children as well as spousal support for himself. On June 11, 2021, Wife filed an amended complaint adding a request for spousal support.

As both parties have practiced law in Centre County, the President Judge of the Court of Common Pleas of Centre County agreed that an independent jurist should resolve the parties' dispute and appointed the Honorable David C. Klementik to preside over this case.

On September 22, 2021, the trial court held a *de novo* hearing via Zoom videoconference, at which both parties represented themselves. The trial court noted on the record that he was pleased that both parties agreed to participate via videoconference as Husband had indicated that he had tested positive for COVID-19. N.T. at 3. Husband did not indicate that the COVID-19 infection would prevent him from participating in the hearing.

Husband claimed that he did not have any income at the time of the hearing and admitted that he has not provided any support to his youngest child for the past two years. N.T. at 13, 33. Husband claimed that the COVID-19 pandemic destroyed his law practice as his client base (Penn State students) left the area due to quarantine practices. Husband admitted that his law practice is still operating with staff working remotely and his website is still active. N.T. at 8-10, 33. Husband conceded that he received federal

unemployment benefits, a PPP "loan" of $150,000, and two payroll grants of approximately $10,000 each. N.T. at 12.

Husband asserted that the COVID-19 pandemic forced him to close his law firm and make an involuntary change in his employment, such that he transitioned to a new career as musician and moved to New York City to achieve this goal. N.T. at 8-9, 13. Husband rents an apartment for $2,000 a month and has spent substantial amounts of money investing in the start of his music career. N.T. at 23-26. Husband spends two to three hours each day practicing on his guitar and also rehearses with his band, writes new music, and works on social media. N.T. at 31-32. Husband suggested that he could take his law firm in a different direction to represent artists with issues like copyright infringement or problems with their royalties. N.T. at 32.

Husband admitted that he still owns his eight-bedroom residence in State College, which he took a second mortgage on and is behind on his payments. N.T. at 9, 13, 24. Although Husband indicated that his son, Mariano, is living there while he was attending Penn State, Husband expressed a desire to rent rooms in the residence on football weekends. N.T. at 44.

Wife claimed that when she worked at Husband's firm during the marriage, Husband controlled her salary and she never received a paycheck. N.T. at 46. After Wife left Husband's firm, she did not work for several months. Thereafter, Wife obtained employment at Penn State, where she received health insurance for the whole family and a 75% tuition discount for the parties' two adult sons, who were both students at Penn State. N.T. at 47.

At the conclusion of the hearing, the trial court determined that Wife's monthly net income was $5,312.86 and assessed that Husband had an earning capacity of $150,000 annually ($8,119.85 net per month). As such, the trial court found that Wife was entitled to child support in the amount of $1,062.14 per month and spousal support in the amount of $436.10 per month effective April 26, 2021. The trial court dismissed Husband's complaint for spousal support as his income exceeds Wife's income. This appeal followed.

Husband raises eleven issues for our review on appeal:

1. Whether the court improperly denied Husband's request to continue the hearing due to his COVID-19 diagnosis such that Husband was not able to properly prepare for his hearing?

2. Whether the court erred in finding Husband was in excellent health when evidence before [the trial] court was that he was positive for COVID-19 at the time of the hearing and not cleared to return to work?

3. Whether the court erred in expecting Husband to take on general practice representation when his career and skills were entirely built on being a criminal defense attorney?

4. Whether the court erred in imposing improper and illegal conditions on Husband, including that he rent and blend his income, where there is no requirement that an individual do so?

5. Whether the court erred in considering his SBA Disaster Assistance Loan received by Husband as a basis for his earning capacity when there was no evidence presented that the amount of said loan was based on Husband's potential earnings?

6. Whether the court erred in failing to consider Husband's 2019 and 2020 tax returns in determining his earning capacity?

7. Whether the court erred in failing to consider Wife's earning capacity beyond her decision to work in public sector employment?

- 5 -

8. Whether the court erred in failing to analyze Wife's income whatsoever including failing to require her to submit her 2020 tax return to the court?

9. Whether the court erred by including facts not in evidence in its decision, such that the court based its determination of earning capacity on unfounded information not received through testimony and exhibits, thereby depriving Husband of due process?

10. Whether the court erred in not conducting its own independent analysis of the information presented, and instead merely endorsed the prior determinations of the Domestic Relations Office?

11. Whether the court erred in failing to recuse itself where the judge expressed and exhibited such bias against Husband that it was impossible for Husband to receive a fair hearing?

Husband's Brief, at 4-5 (suggested answers omitted, reordered for ease of review).

In his first two issues, Husband claims the trial court erred in denying his request to continue the hearing as Husband had tested positive for COVID-19. Husband claims that his COVID infection prevented him from properly preparing for the hearing and argues that the trial court improperly found Husband was in "excellent health." Husband's Brief, at 4, 12-13.

In reviewing this claim, we are guided by the following standard:

[a]ppellate review of a trial court's continuance decision is deferential. The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. As we have consistently stated, an abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record[.]

*Commonwealth v. Norton*, 144 A.3d 139, 143 (Pa.Super. 2016) (quoting *Commonwealth v. Brooks*, 104 A.3d 466 (Pa. 2014) (quotations marks, quotation, and citation omitted)).

In evaluating whether a trial court abused its discretion in denying a continuance request, the reviewing court must consider "whether there was prejudice to the opposing party by a delay, whether opposing counsel was willing to continue the case, the length of the delay requested, and the complexities involved in presenting the case." *Rutyna v. Schweers*, 177 A.3d 927, 933 (Pa.Super. 2018) (quoting *Papalia v. Montour Auto. Serv. Co.*, 682 A.2d 343, 345 (Pa.Super. 1996) (citations omitted)).

Our review of the record reveals that Husband neither filed a written motion seeking the continuance nor made an oral request for a continuance on the record. In its opinion pursuant to Pa.R.A.P. 1925(a), the trial court indicated that Husband made an "informal request" to continue the hearing as he had tested positive for COVID-19. Based on this request, the trial court concluded it would be "safe" to conduct the proceeding via Zoom videoconference to avoid in-person contact. N.T. at 3.

The trial court asserted that Husband never indicated his COVID-19 infection rendered him incapable of preparing for or attending the videoconference. Further, when Husband attended the videoconference without objection, the trial court believed Husband was fully able to represent himself and observed that Husband did not appear to be suffering from any

incapacity. The trial court denied Husband's bald assertion that it had made a factual finding that Husband was in "excellent health."

Husband claims that he presented the trial court with a Physician Verification Form which stated that Husband's COVID-19 diagnosis prevented him from working from September 12 to September 22, which was the day of the parties' hearing. The trial court indicated that it did not see this form in the parties' file until after the appeal was filed. We have scoured the record for the form and have been unable to find the document.

Even if such a document had been entered into the record, there is no indication that Husband presented this physician verification form to support his request for a continuance, but instead referred to this document to show that he could not produce income during this ten-day period as his COVID-19 infection required him to cancel musical shows. N.T. at 29-30.

As Husband never explained to the trial court that he was requesting the continuance due to his inability to prepare for the hearing, the trial court believed that it was sufficient to hold a videoconference to avoid any in-person contact. Therefore, as Husband did not fully preserve this issue before the trial court by providing a developed argument to justify the continuance, we find this issue waived on appeal.

Husband's third, fourth, fifth, and sixth issues concern his claim that the trial court erred in imposing him an earning capacity despite his assertion that he currently has no income available to provide support.

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

**Silver v. Pinskey**, 981 A.2d 284, 291 (Pa.Super. 2009).

In reviewing the calculation of a party's support obligations, this Court has held that:

a person's support obligation is determined primarily by the parties' actual financial resources and their earning capacity. **Hoag v. Hoag**, 435 Pa.Super. 428, 646 A.2d 578 (1994). Although a person's actual earnings usually reflect his earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings. **See DeMasi v. DeMasi**, 408 Pa.Super. 414, 597 A.2d 101 (1991).

**Woskob v. Woskob**, 843 A.2d 1247, 1251 (Pa.Super. 2004).

As noted above, Husband claims he has no income and was involuntarily forced out of his law practice by the COVID-19 pandemic as the majority of his client base, Penn State students, were not on campus during the lockdown periods as their classes were cancelled. As his law practice revenues dropped significantly during that time period, Husband chose to pursue another career as a guitarist and member of a band.

Pennsylvania Rule of Civil Procedure 1910.16–2, which outlines the procedure for calculating monthly income provides, in relevant part:

(d) **Reduced or Fluctuating Income**.

(1) *Voluntary Reduction of Income.* When either party voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or changes employment status to pursue an education, or is fired for cause, there generally will be no effect on the support obligation.

(2) *Involuntary Reduction of, and Fluctuations in, Income.* No adjustments in support payments will be made for normal fluctuations in earnings. However, appropriate adjustments will be made for substantial continuing involuntary decreases in income, including but not limited to the result of illness, lay-off, termination, job elimination or some other employment situation over which the party has no control unless the trier of fact finds that such a reduction in income was willfully undertaken in an attempt to avoid or reduce the support obligation.

...

(4) *Earning Capacity*. Ordinarily, either party to a support action who willfully fails to obtain appropriate employment will be considered to have an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity.

Pa.R.C.P.1910.16–2(d)(1), (2), (4).

Further, this Court has held that:

Child support is a shared responsibility requiring both parents to contribute to the support of their children in accordance with their relative incomes and ability to pay. **Depp v. Holland***,* 431 Pa.Super. 209, 636 A.2d 204, 208 (1994) (citing **DeWalt v. DeWalt***,* 365 Pa.Super. 280, 529 A.2d 508 (1987)). … "It is well settled that "to modify a support obligation based upon reduced income, a petitioner must first establish that the voluntary change in employment which resulted in a reduction of income was not made for the purpose of avoiding a child support obligation and secondly, that a reduction in support is warranted based on petitioner's efforts to mitigate any income loss." **Grimes v. Grimes***,* 408 Pa.Super. 158, 596 A.2d 240, 242 (1991). Effectively, [the a]ppellant "must present evidence as to why he or she voluntarily left the prior employment and also as to why the acceptance of a lower paying job was necessary." **Id***.* Where

> a party willfully fails to obtain appropriate employment, his or her income will be considered to be equal to his or her earning capacity. Pa.R.C.P.1910.16–2(d)(4). A determination of earning capacity must consider the party's age, education, training, health, work experience, earnings history, and child care responsibilities. *Id.*

*Kersey v. Jefferson*, 791 A.2d 419, 423 (Pa.Super. 2002).

In *Commonwealth ex rel. McNulty v. McNulty*, 311 A.2d 701, 703 (Pa.Super. 1973), this Court found there was competent evidence to show the husband's earning capacity was greatly in excess of his income as he voluntarily left his former position as a sheet metal mechanic with an extreme reduction in pay to become a bartender. This Court found the husband's career change was intentional and thus, calculated the husband's support obligations based on his earning capacity. *Id*. *See also Commonwealth ex rel. Snively v. Snively*, 212 A.2d 905, 906 (Pa.Super. 1965) (finding the husband's ambition to leave his job to go to college, while praiseworthy, could not be realized at the expense of his obligation to support his child); *Commonwealth ex rel. Raitt v. Raitt*, 199 A.2d 512, 513 (Pa.Super. 1964) (finding that the father, a pharmacist with a doctorate degree, had a higher potential earning capacity than his actual earnings at a local pharmacy).

In this case, the trial court observed that Husband's 2019 tax return showed that Husband's law firm/S-corporation earned gross revenues of $521,000 and Husband had an individual Schedule K-1 income of $206,000. Although Husband claimed his law practice was destroyed by the COVID-19 pandemic that began in 2020, he fails to acknowledge that he received substantial assistance in the form of a Paycheck Protection Program (PPP)

"loan" in the amount of $150,000, and two $10,000 PPP small business grants, all three of which were forgiven. The trial court noted that loan forgiveness is regarded as "compensation" within the definition of "income" for support purposes. The trial court found that while Husband's firm lost revenue as a result of the COVID-19 pandemic, his "losses were propped up by the PPP loans that are not required to be paid."

While Husband would have this Court construe his career change as an involuntary reduction in income, it was Husband's own decision to abandon his law practice, legal training, and experience to start anew as a musician in the entertainment industry in New York City. We agree with the trial court's observation that Husband's decision to make a career change "foreclosed the possibility that he might find other avenues in his law practice to at least generate revenue pending the ultimate return of the [Penn State] student body and his primary revenue source." Trial Court Opinion, 12/13/21, at 5-6.

Husband did not attempt to present any evidence that he attempted to use his legal expertise to generate income during the pandemic. Moreover, at the time of the hearing in this case in September 2021, as Penn State had resumed in-person learning, Husband's client base had returned to campus and thus, presumably would be available and in need of legal assistance in the area of Husband's expertise.

We also find no merit to Husband's claim that the trial court improperly considered the fact that Husband rented a $2,000/month apartment in New York City while he was still burdened by a mortgage on and the maintenance

of his eight-bedroom home near State College. We find this factual information was relevant to assess whether Husband had acted in good faith to mitigate the income he lost in making his career change.

After Husband left the practice of law and abandoned his only source of income, Husband took out a second mortgage on the State College home in order to pay for his own living expenses. N.T. at 12-13. Husband allowed one of his adult children and another relative to live in the home rent free while they studied at Penn State. While Husband indicated that he had the potential to rent rooms in his home on football weekends through Airbnb, he did not show any initiative in doing so to offset the losses he was sustaining as a result of his career change.

Further, despite Husband's decision to spend significant amounts of money to further his music career and spending hours practicing his guitar, writing songs, and organizing a band, Husband admitted he is yet to generate income as a musician and claimed losses at the support hearing. Husband cannot guarantee increased future earnings or success in the music industry.

Based on these circumstances, the trial court found Husband made no effort to blend income from his work as a highly experienced criminal law attorney with his work as a musician. The trial court found Husband is a healthy individual that is fully capable of generating income through full-time work and assessed his earning capacity to be $150,000 annually.

Although Husband contends that he did not change careers to defeat his family's right to support, the extreme reduction in his income and his failure

to even attempt to mitigate that income loss supports the trial court's finding that Husband's career change led to an intentional decrease in income. As such, the trial court was justified in considering Husband's earning capacity to calculate his support obligations.

Despite Husband's arguments to the contrary, we cannot find Husband's desire to pursue his dream of becoming a successful musician trumps his obligation to support his family. Accordingly, we decline to disturb the trial court's decision to assess Father an earning capacity of $150,000 annually.

In Husband's seventh and eighth issues, Husband claims the trial court erred in calculating Wife's earning capacity. In his ninth and tenth issues, Husband claims the trial court erred in considering certain facts not in evidence and in relying on the prior determinations of the Domestic Relations Office.

While Husband raised these issues in the questions presented section of his brief, he did not include any discussion of these claims in the argument section. Our courts have held that "[w]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." **In re Major**, 248 A.3d 445, 454 (Pa. 2021) (quoting **Commonwealth v. Johnson**, 985 A.2d 915, 924 (Pa. 2009)). As a result, we find this issue to be waived.

Lastly, Husband claims the trial court erred in denying his motion for recusal as he alleges the trial judge expressed and exhibited such bias against Husband that it was impossible for Husband to receive a fair hearing.

We review a trial court's denial of a recusal motion for an abuse of discretion and extend "extreme deference" to a trial court's decision not to recuse. *In re A.D.,* 93 A.3d 888, 892 (Pa.Super. 2014).

> As we explained in *Commonwealth v. Harris*, 979 A.2d 387, 391–392 (Pa.Super.2009) (quoting in part *Commonwealth v. Bonds*, 890 A.2d 414, 418 (Pa.Super. 2005)), "[w]e recognize that our trial judges are 'honorable, fair and competent,' and although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially." Hence, a trial judge should grant the motion to recuse only if a doubt exists as to his or her ability to preside impartially or if impartiality can be reasonably questioned. *In re Bridgeport Fire Litigation*, 5 A.3d 1250, 1254 (Pa.Super. 2010).
>
> In order to prevail, … the party seeking recusal, must satisfy the burden "to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *In re S.H.,* 879 A.2d 802, 808 (Pa.Super. 2005) (quoting *Arnold v. Arnold*, 847 A.2d 674, 680–81 (Pa.Super. 2004)).

*Id*.

Husband points to no specific evidence or any commentary by the trial judge that would support his argument that recusal was warranted other than his bare allegation that the trial court exhibited an attitude of disdain. As noted above, the trial judge was specifically selected to preside over this case as he had no prior history with either of the parties in their roles as members of Centre County Bar. As there is no support for Husband's argument, we conclude the trial court did not err in denying the recusal motion.

For the foregoing reasons, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/17/2022