616 A.2d 22

**Daniel Kris ATKINSON, Appellant**

v.

**Maria Dolores ATKINSON now Maria Dolores Sprester.**

Superior Court of Pennsylvania.

Submitted Feb. 10, 1992.

Filed Nov. 10, 1992.

Earl S. Cohen, Pittsburgh, for appellant.

Maria Dolores Sprester, pro se.

Before DEL SOLE, TAMILIA and HESTER, JJ.

TAMILIA, Judge.

Christopher Atkinson, who was 12 years of age at the time of the Order in question, lived with his mother, appellee/defendant, who was the primary caretaker from birth until August, 1990. Custody was awarded to the father by court Order, apparently resulting from the child's wishes but against those of the mother (T.T., 7/23/91, p. 5). Appellee remarried after divorcing appellant and had two children from the second marriage, the first being deceased. Her second child was born in 1989 and was one and one-half years of age at the time of the Order in question. After receiving testimony that

appellee remained in the home to take care of her child, the court determined that she had zero support obligation for Christopher as she was unemployed and assuming full-time care for her son. Appellant maintains this was error as the court was required to establish appellee's earning potential and to frame a reasonable support Order based on this potential. Appellant maintains that a mother should be required to pay support for a child of her first marriage who is living with his father even though she is a full-time caretaker for the child of her second marriage. Appellant would impute a minimal $300 per month earning to appellee, which would suggest an Order pursuant to state-wide support guidelines of $59 per month. Appellant's supporting argument for this issue is that the support burden must be shared equally by the parents and a father would be required to have an income amount imputed to him if he remarried and had a child for whom he was caring for full-time.

The trial court, while finding the issue a troubling one, relied upon the nurturing parent doctrine whereby, in appropriate cases, the earning capacity of a parent who chooses to stay home with young children need not be considered, citing *Hesidenz v. Carbin,* 354 Pa.Super. 610, 512 A.2d 707 (1986); *Butler v. Butler,* 339 Pa.Super. 312, 488 A.2d 1141 (1985). Apparently there is no problem with the rule when the mother is caring for the children of the marriage. It is when the mother is caring for her children of a second marriage that the conflict arises. Judge Blahovic determined that the issue was not whether the mother was caring for her children as opposed to *their* children, but whether under the facts of the case what the earning capacity would be. This is the correct analysis under these facts, particularly since there is no evidence of the mother's earning capacity based on her work record or employability. On this record imputing earning capacity to the mother is a fiction which simply shifts the burden of supporting the wife's child of the first marriage to her second husband, who has no legal obligation to do so.

The concept of imposing a support Order based on earning potential is of long standing in support law and derives from

the principle that a person who has a support obligation may not withdraw from income producing endeavors to defeat the right of support to his/her dependents. It has never been the law that a mother who elects to care for her young child is chargeable with voluntary withdrawal from income-producing activity to defeat the right to support her child by a previous marriage.

The record in this case is totally devoid of any evidence that the mother ever worked, or that her son, who lived most of his life with her before electing to go with his father, did not have the benefit of her full-time nurturing. Without proof of her income-producing capacity and the prior practice as to the older child, this Court has no basis upon which to overrule the judgment of the trial court. If the appellant is attempting to create social policy based on the realities of today's family structure and the Equal Rights Amendment, it is misguided at best and anti-family at worst. To place a value on appellant's homemaking and nurturing duties which can be assessed against her husband, thereby establishing a support amount by virtue of his savings to create a third-party beneficiary in the child with the father, is so convoluted as to render support evaluations speculative and conjectural.

The appellant also ignores the exceptional burden women carry in our society for child rearing and nurturing in alleging that they should not be treated differently than husbands and fathers in the nurturing parent application. Unquestionably, some fathers will fall within the ambit of the nurturing parent doctrine when it comes to applying it to support duties for prior families. Mothers, however, by every measure and study that addresses this issue, are far and away more deeply involved and effected by the nurturing requirement than fathers and without question are generally impoverished by separation and divorce when children are involved. To attempt to restructure the nurturing parent doctrine as detailed in the appellant's brief will simply add to an already lopsided and unbalanced burden on women caring for children. It is another destructive step in a culture which appears bent on destroying family stability. It also will increase the pressure

on women with second families to abort pregnancies and to abandon children, or to give up on second marriages with children when the stress of either going to work or forcing the second husband to support her children by a prior marriage becomes unbearable.

The Order of the trial court is affirmed.

DEL SOLE, J., dissents.

DEL SOLE, Judge, dissenting.

Daniel Kris Atkinson and Maria Dolores Sprester are the parents of Kristopher Robin Atkinson. Mr. Atkinson received custody of Kristopher in 1990, after the parties agreed to a consent custody order. At the time of the order, Mr. Atkinson had remarried and has two step-children who reside with him and his second wife. Mrs. Sprester married Gary Lee Sprester in 1989 and the couple has a son. Mrs. Sprester is not employed and cares for her son at home. She has no physical condition to prevent her from working. Mr. Atkinson seeks support from Mrs. Sprester. Based on the facts, the hearing Officer determined that Mrs. Sprester was unable to work because she desired to remain with her young child and had established no earning capacity. Accordingly, the Hearing Officer entered a "zero" support order. Mr. Atkinson sought trial court review and a de novo hearing was held. The trial court denied relief and entered an order stating that the "zero" support order was to remain in full force and effect. This appeal followed.

When reviewing an order of support, this court will not reverse the decision of the trial court absent an abuse of discretion. *Machen v. Machen,* 278 Pa.Super. 135, 420 A.2d 466 (1980). It is also well established that both parents are equally responsible to support their children. *DeMasi v. DeMasi,* 366 Pa.Super. 19, 530 A.2d 871 (1987). In determining a parent's ability to provide support, the focus is on earning capacity rather than on the parent's actual earnings. *Akers v. Akers,* 373 Pa.Super. 1, 540 A.2d 269 (1988). Among the factors to be considered in evaluating a parent's support

obligation are the parent's income, potential earning power, and the nature and extent of property and financial resources. *Commonwealth ex rel. ReDavid v. ReDavid*, 251 Pa.Super. 103, 380 A.2d 398 (1977). The trial court must also consider, however, that a parent may not be penalized for having remained in the home for the purpose of nurturing young children instead of securing work outside of the home. *Rock v. Rock*, 385 Pa.Super. 126, 560 A.2d 199 (1989). This exception, which held that earning capacity cannot always be imputed to the "nurturing parent" who chooses to stay home with a minor child, was first pronounced in *Commonwealth ex rel. Wasiolek v. Wasiolek*, 251 Pa.Super. 108, 380 A.2d 400 (1977). In *Wasiolek* we held that earning capacity cannot always be attributed to a parent who chooses to stay home with a minor child, and that in deciding whether to excuse the nurturing parent from any support obligation for that child, the trial court is to consider the child's age and maturity, the availability of others to assist the parent, the adequacy of available financial resources if the parent remains at home, and the parent's desire to stay at home and nurture the child. *Hesidenz v. Carbin*, 354 Pa.Super. 610, 616, 512 A.2d 707, 710 (1986).

We did not establish an absolute rule in *Wasiolek*, however, that an earning capacity cannot be imputed to a nurturing parent who chooses to stay at home rather than work outside of the home. Rather, we held that the nurturing parent's perception that the welfare of the child is served by having a parent at home is not dispositive, but is merely one factor to be considered by the trial court in making its determination whether to excuse the parent from contributing support. *See Bender v. Bender*, 297 Pa.Super. 461, 444 A.2d 124 (1982). In *Bender*, we held that the fact that the "nurtured" child was not the subject of the support order nor the child of the father could be considered by the trial court, but did not necessarily remove the case from *Wasiolek's* "nurturing parent" exception. *Bender* at 467, 444 A.2d at 126. However, we did not exempt the "nurturing parent" from possible support obli-

gations particularly where the "nurtured" child is not the subject of the support order.

In the instant case, the trial court concluded that Mrs. Sprester had not established an earning capacity because she chose to remain at home to care for her young child. Unfortunately, this conclusion ignores the economic reality that exists in her present family situation. While her remaining at home may prevent her from engaging in paid employment, it is of economic value to her present family unit. A determination of that value should have been made by the trial court. The fact that the Sprester family is being spared the expense of having to pay for child care is relevant in determining Mrs. Sprester's earning capacity. A portion of that value should inure to the benefit of the child who is not in her custody. Therefore, the value of Mrs. Sprester's nurturing parent services to her family unit should have been considered by the trial court in determining her support obligation. A non-custodial parent should not escape child support solely because a new family unit is established and additional children require care. To hold otherwise would be contrary to the general support law of this Commonwealth which requires parents to support their children from prior relationships. I seriously doubt that the Majority would allow a father, who remarries and starts a new family, to remain at home with his children and claim the nurturing parent exception to avoid supporting children from a prior marriage.

Contrary to the position expressed by the Majority, requiring all parents to be responsible financially for their children is not "another destructive step in a culture which appears bent on destroying family stability." Rather, it is a realistic attempt to insure that both parents have a responsibility to their children. Being a parent is a demanding vocation that requires personal and financial sacrifice. By choosing not to allow a parent to escape child support obligations because of the existence of a new family we are recognizing the needs of children to the love, support, and sacrifice of both parents.

I believe that courts must look beyond a nurturing parent claim, particularly where the nurtured child is not the one for

whom support is sought, to determine a parties support obligation. In arriving at this determination, courts should consider the financial condition of the family, the nurturing needs being met, the ability of the obligor parent to engage in employment, the economic value of the nurturing parent's service to the family unit, and any other factors that may enhance this determination.

Therefore, I dissent.