David DEPP, Appellee,

v.

Carol A. HOLLAND, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 8, 1993.
Filed Jan. 6, 1994.

Joseph J. Chester, Pittsburgh, for appellant.

Samuel R. Sciullo, Pittsburgh, for appellee.

Before TAMILIA, HUDOCK and CERCONE, JJ.

HUDOCK, Judge:

Carol A. Holland (Mother) appeals from the order of the trial court denying her exceptions to the hearing officer's recommendation that no support award be entered and that she pay $50 per month toward arrears to David Depp (Father). We affirm in part and reverse in part.

The facts and procedural history may be summarized as follows: While the parties have never been married to each other, they are the parents of Kyle Holland Depp (Kyle), who was born on September 25, 1988. From his birth until November 17, 1989, Mother had primary physical custody of Kyle and Father was paying support and had limited visitation rights. On that date, pursuant to a complaint for primary custody filed by Father, Father was awarded primary physical custody. Father then proceeded to provide for his son without the financial assistance of

Mother. On September 13, 1990, Father filed a petition for the support of Kyle against Mother. At the conclusion of a hearing on January 4, 1991, the permanent hearing officer recommended that Mother pay $210 per month for Kyle's support, as well as $20 monthly toward arrearages. Following argument on exceptions, on July 31, 1991, the order of support was reduced to $117 per month.

On January 2, 1992, a petition for contempt against Mother was filed, and a date for a compliance hearing was requested. On January 17, 1992, Mother filed a counterpetition requesting either a downward modification or termination of the child support order based on the fact that she had given birth to a second child out-of-wedlock to John Beyers. As of that date, Mother had only paid $120 toward her support obligation. After a full hearing on March 5, 1992, the permanent hearing officer recommended that Mother be found in contempt. Her support obligation was reduced to $100 per month and $20 monthly toward arrearages which were, at that time, set at $1,916. In addition, Mother was ordered to seek employment and to present a job log to the court at a compliance hearing which was ultimately scheduled for September 15, 1992. Mother filed exceptions to this recommendation, urging that the "nurturing parent doctrine" was applicable, thereby exempting her from responsibility for the support of Kyle. These exceptions were dismissed by the trial court.

In the meantime, and after a period of supervised partial custody at Father's residence, Mother, after posting security, was granted expanded partial custody away from Father's residence at her home in Murrysville. On August 19, 1992, the parties entered into a consent order which created shared custody between the parties. The precise apportionment of time was established to be that Kyle spend 52.68% of his time with Mother and 47.32% of his time with Father.

Four days prior to the September 15 compliance hearing, Mother filed a petition for modification/termination of the existing support order based on her claim that the consent order regarding shared custody presented a change in circumstances. After a full hearing regarding both Mother's compliance with earlier orders of court and with her petition to modify/terminate, the permanent hearing officer: 1) suspended the order of March 23, 1992 (dismissing Mother's exceptions and entering a $100 monthly support order retroactive to August 17, 1992); 2) found Father had a monthly net income of approximately $1,400 and established an earning capacity for Mother of $1,200 per month, an increase in the previous $600 monthly earning capacity attributed to her at the March 5, 1992, hearing; 3) entered no award of support in favor of either party, but set arrearages at $2,423.16 as of September 15, 1992, payable to Father at a rate of $50 per month; 4) found that Mother remained in contempt for failing to seek employment and failing to make support payments; and 5) directed that a compliance hearing be held in six months.

Mother filed exceptions to these findings and recommendations claiming, among other things, that she was improperly accorded an increased earning capacity, that Father should have been ordered to pay child support to her, and that she should have been given the benefit of the "nurturing parent doctrine." Following argument on these exceptions, the trial court sustained Mother's exceptions to the extent that Mother's earning capacity was reduced to $600 per month, but otherwise dismissed the exceptions and reaffirmed a September 30, 1992, order directing Mother to pay $50 per month in arrearages. Thereafter, a petition for reconsideration was denied. On appeal, Mother claims that the trial court erred in failing to enter an order of child support in her favor against Father and in failing to apply the "nurturing parent doctrine." We will address these claims in reverse order.

■ As our Supreme Court has recently stated:

Our scope of review in support matters is well settled. Absent an abuse of discretion, we will not disturb on appeal a properly entered support order. *Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d 991 (1984). An abuse of discretion "is not merely an error of judgment, but if in

reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *In re Women's Homeopathic Hospital of Philadelphia*, 393 Pa. 313, 316, 142 A.2d 292, 294 (1958).

At common law, the duty of a parent to support his child was conditioned upon a parent receiving love, affection and assistance from that child. Contrary to the common law, today, the duty to support a minor child is absolute. *Melzer*, supra. However, in awarding child support, we must be cognizant of its purpose which is to promote the best interests of the child. *Sutliff v. Sutliff*, 515 Pa. 393, 528 A.2d 1318 (1987).

*Oeler by Gross v. Oeler*, 527 Pa. 532, 537, 594 A.2d 649, 651 (1991). Child support is a shared responsibility; both parents must contribute to the support of their child in accordance with their relative incomes and ability to pay. *DeWalt v. DeWalt*, 365 Pa.Super. 280, 529 A.2d 508 (1987).

As averred by Mother, the support guidelines do not directly address support obligations in shared custody situations. The permanent hearing officer considered the obligations of each party in this situation by calculating offsetting support obligations. Using a monthly net income of $1,400 for Father as obligee and $1,200 for Mother as obligor, the hearing officer arrived at a guideline figure of $210 per month. The hearing officer then divided that figure by 47.32 percent, representing the time Father had custody of Kyle. The resultant figure was $93.37. The hearing officer then used the same figures as if Mother were the obligee and Father the obligor, and arrived at a guideline figure of $245 a month. The hearing officer then divided that figure by the time Kyle spends with Mother, 52.68 percent, and arrived at a figure of $129 per month. Offsetting these two figures, the hearing officer achieved a difference of $29.63. Offsetting the monthly support obligations as if either party had primary physical custody, the hearing officer found a difference of $35 per month. Finding this result to be substantially the same, no order of support was assessed against either party. The hearing officer, however, did recommend that Mother pay Father $50 per month toward arrears. As stated above, the trial court denied Mother's exceptions to its order affirming the recommendation except for stating that Mother was to be assessed a $600 earning capacity.

■ Mother first claims that the trial court erred in assessing her any earning capacity because she should have received the benefit of the "nurturing parent doctrine." This Court recently discussed this doctrine in a case, like the present, where the issue was the mother's duty to support the child of her first marriage in view of the fact that she stayed home to care for her infant child of a second marriage. In reviewing the actions of the trial court, which assigned no earning capacity to her, this Court stated:

The trial court, while finding the issue a troubling one, relied upon the nurturing parent doctrine whereby, in appropriate cases, the earning capacity of a parent who chooses to stay home with young children need not be considered, citing *Hesidenz v. Carbin*, 354 Pa.Super. 610, 512 A.2d 707 (1986); *Butler v. Butler*, 339 Pa.Super. 312, 488 A.2d 1141 (1985). Apparently there is no problem with the rule when the mother is caring for the children of the marriage. It is when the mother is caring for her children of a second marriage that the conflict arises. Judge Blahovic determined that the issue was not whether the mother was caring for her children as opposed to *their* children, but whether under the facts of the case what the earning capacity would be. This is the correct analysis under these facts, particularly since there is no evidence of the mother's earning capacity based on her work record or employability. On this record imputing earning capacity to the mother is a fiction which simply shifts the burden of supporting the wife's child of the first marriage to her second husband, who has no legal obligation to do so.

The concept of imposing a support Order based on earning potential is of long standing in support law and derives from

the principle that a person who has a support obligation may not withdraw from income producing endeavors to defeat the right of support to his/her dependents. It has never been the law that a mother who elects to care for her young child is chargeable with voluntary withdrawal from income-producing activity to defeat the right to support her child by a previous marriage.

*Atkinson v. Atkinson,* 420 Pa.Super. 146, 148–149, 616 A.2d 22, 23 (1992) (emphasis in original). Finding that the record was totally devoid of any evidence that the mother ever worked, the majority in *Atkinson* affirmed the assessment of zero earning capacity to the mother.

■ As recognized by the dissent in *Atkinson,* the "nurturing parent doctrine" is not an absolute rule; it is but one factor to be considered by the trial court in determining whether to excuse the parent from contributing toward support. *See Atkinson, supra,* (Del Sole, J. dissenting). Upon review, we find that the particular facts of this case do not warrant the application of the "nurturing parent doctrine" to Mother. Unlike the mother in *Atkinson,* Mother not only has a past work history but, as demonstrated by the record, she has in the past performed private accounting for persons and at one time ran a day care facility out of her home. Under these circumstances, application of the "nurturing parent doctrine" is not appropriate. Thus, we affirm this part of the trial court's order.

■ Mother's next exception was that the hearing master overstated her earning capacity at $1200 per month. The trial court sustained this exception and lowered the assessed earning capacity to $600 per month. In its 1925(a) opinion, the trial court states that it need not further address this contention because it sustained the exception. However, we note that this adjustment in earning capacity alters completely the calculations of the hearing officer. Our own calculations now place the offsetting figures in favor of mother to be approximately $59 per month. While we do not find this to be a substantial difference, we remand to the trial court for its determination as to whether this difference would alter its previous order.

Order affirmed in part and reversed in part. The matter is remanded for a determination of an order of support, if any, given Father's net income of $1,400 per month and Mother's earning capacity of $600 a month.[1] Jurisdiction relinquished.

TAMILIA, J. files a Concurring Opinion.

TAMILIA, Judge, concurring:

I join my colleagues but write separately to clarify my position on the issue of the "nurturing parent doctrine." In this case, the mother of the child for whom support was ordered alleges trial court error in assessing her an earnings potential of $600, thus diminishing the amount that the father was required to contribute for the child's support. I believe Judge Baldwin was correct in making such an assessment and reducing the earning capacity/potential of the mother from $1,200 per month, as recommended by the hearing officer, to $600 per month because such a decision was fact specific.

With the advent of the Equal Rights Amendment in Pennsylvania in 1972, and the recent application of equal protection concepts of the Federal and State Constitutions, custody and support matters have undergone a fundamental revision from the past. Before the changes occurred, the father was held to be primarily liable for the support of children, the mother, secondarily liable. The mother's duty became operative only if and when the father was unable to maintain the child. The tender years doctrine established a prima facie right to custody in a mother, which the father could overcome only by establishing her unfitness as a parent. Today, support obligations are the equal and joint responsibility of both parents, based upon their ability to pay, which includes

---

1. In closing, Mother argues "to the extent that [Mother] was entitled to an order of child support, she is entitled to an adjustment of arrears." Mother's Brief at p. 9. We note, however, that Mother has not taken issue with her obligation to pay Father $50 per month toward these arrearages.

earning capacity, and custody is determined on the standard of the best interest of the child with both parents having equal right to custody unfettered by gender based biases.

To assist trial courts in reaching the very difficult decision on support, federal and state legislation has provided for support guidelines, factoring in the joint parental obligation, which are promulgated under rule by the Pennsylvania Supreme Court. As to the even more difficult decisions to be made by trial judges as to custody, legislation has been promulgated providing for shared custody. Even more significant is the judicially approved doctrine of the primary caretaker which provides an alternative to any presumptions based on the standard of the best interest of the child and filling the void created by *Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635 (1977), which abrogated the tender years doctrine. Once the award of custody has been made, the court may consider whether a parent having custody is entitled to elect child care responsibility as opposed to employment under the nurturing parent doctrine.

Focusing these concepts to bear on this case, the proper result was achieved by giving proper weight to the various concepts. At the outset, I believe as a matter of public policy, as this writer stated in *Atkinson v. Atkinson*, 420 Pa.Super. 146, 616 A.2d 22 (1992) (Tamilia, J.), a mother who is in custody of a child, particularly an infant, may elect to remain at home caring for that child and no earning capacity or potential may be assessed to the mother without actual earnings because of that decision. It is likely that under the same circumstances, a father would receive the same treatment. However, where as here there is an agreement and consent Order of shared custody, and where the mother had significant earning capacity prior to the birth of the child, but chooses to pursue her education rather than be employed, her part-time parenting does not qualify for a full exemption from child support by claiming the nurturing parent benefit. The law has never permitted a parent to withdraw from support or maintaining children to pursue private education goals. The needs of the children have always been paramount. The able trial judge made this abundantly clear by exempting one-half the caring capacity of $1,200 per month because the mother is nurturing the child approximately 50 per cent of the time. If she had been employed instead of seeking an educational goal for the remaining 50 per cent, assuming her income was at the rate of $1,200 per month, reduced by 50 percent, the share attributed to her would have been the same. It also is worthy of comment that the mother in this case is entitled to the benefits of the nurturing parent doctrine despite the fact this child was born out of wedlock. It has been the law since *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct., 1509, 20 L.Ed.2d 436 (1968), that children born out of wedlock may not be treated differently than children born during marriage. In computing support for such children, the nurturing parent doctrine must be applied as with children born within marriage. *Also see Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

Finding no error in the trial court's analysis and finding, I join in affirmance.