**Reinert v. Reinert**

*Daniel I. Sager,* for plaintiff.
*Bruce L. Baldwin,* for defendant.

LIEBERMAN, *J.,* November 8, 2006—This matter came before the court on May 23, 2006, when the plaintiff filed exceptions to the May 17, 2006 recommenda-

tions of the support master. The case involves the support of one child, Kourtney Ann Reinert, date of birth March 25, 1996. Kevin J. Reinert, Kourtney's father, has primary physical custody and is the plaintiff in this matter. The support master recommended that the support obligation of Krista L. Reinert, defendant and mother of Kourtney, be suspended and that $50 per month be paid towards the arrears.

The parties have stipulated that the father has an income of $416.02 per week in workers' compensation benefits.[1] The facts concerning the mother are that she was last employed as a certified nursing assistant. The mother received her certificate as a certified nursing assistant in 2002, and worked between 24 and 36 hours per week at a rate of approximately $9.20 per hour. On December 7, 2004, the mother was removed from work due to complications from a high risk pregnancy. The mother was pregnant with twins and was ordered not to lift more than 10 pounds. This resulted in the mother's employer placing her on leave as there was no available work for her based upon this restriction. The mother was

---

1. There is some dispute over this number. In the testimony, the $416.02 figure was originally stated by defense counsel. The hearing master asked that the number be repeated, whereby defense counsel either misspoke and stated the number to be $216.02, or there was an error in transcription. (N.T. 10/28/05, p. 3.) Plaintiff's counsel used this error to forward to this court the $216.02 amount as the father's income, despite the fact that the stipulated income was stated to be $416.02 at a later hearing. (N.T. 1/31/06, p. 16.) This court believes the $416.02 number is the correct number based upon the 1/31/06 testimony, as well as the support order of October 22, 2004 which states the father receives $1,802.75 in monthly worker's compensation benefits.

ultimately put on modified bed rest during the remainder of her pregnancy. The mother gave birth to twin girls on May 16, 2005. The mother also has previously worked as a hairdresser. This was prior to Kourtney's birth, and the mother quit this position to become a stay-at-home mom after Kourtney was born. (N.T. 10/28/05, pp. 4-7.)

The mother currently is not working, and receives $399 per month in food stamps and $276 per month in Women and Infant Children (WIC) subsidies from the state, as well as free health insurance for her and the twins. (N.T., 10/28/05, p. 13.) The mother has explored returning to work, but the costs of childcare have proved prohibitive.[2] In the mother's last position, she made $9.20 an hour and worked a maximum of 36 hours per week. This resulted in weekly earnings of $331.20. As the cheapest childcare available in the area for the two girls would cost $350 per week, the mother would lose approximately $20 a week before taxes if she were to work and pay childcare costs. She would also lose the various government benefits she is currently receiving. (N.T., 10/28/05, pp. 13-14.)

This court was thus presented with the problem that the mother has no income of her own, and if she was to return to work, she and the infant children from her new relationship would actually be in a worse financial posi-

---

2. The defendant provided documentation to the support master concerning the fees charged by childcare services in her area. One facility charge $175 a week per child, and the other $195 a week per child. Since the care is for twin girls, the total childcare charge would be either $350 a week or $390 a week. (N.T. 1/31/06, p. 13.)

tion than they are currently in due to the loss of government benefits and the childcare costs. If this court would have ordered the mother to pay support for Kourtney, the reality of the situation is that the burden of Kourtney's support would have fallen on the mother's fiancé, who has three children to support in addition to the twin girls. Faced with such a problem, this court agreed with the support master's suspension of the support order regarding Kourtney and entered an order accordingly. The plaintiff has appealed this court's order, and upon direction from this court, has timely filed a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). In the statement, the plaintiff alleges four issues for appeal. They are:

(1) The nurturing parent doctrine is not a legal doctrine to be applied to any case where a parent decides not to work as a result of having preschool children.

(2) Even if the nurturing parent doctrine is applicable to all cases in which a parent decides to stay at home to take care of a preschool child, it does not apply to this case because Mother testified that she is seeking employment and desires to work.

(3) Mother should have been attributed an earning capacity equal to her experience, education and work history in calculating her support obligation for the minor child.

(4) In determining whether Mother's daycare expenses for the children born of another relationship exceed that of her earning capacity, the court should have taken into consideration the other household income. The household income used to support the minor children

of Mother's current intact relationship exceeds significantly the household income in Father's household without Mother having an obligation to support the child at issue in this case.

The standard of review for the Superior Court in reviewing a child support order is narrow, and the Superior Court will not interfere with the trial court's order absent a clear abuse of discretion, shown by clear and convincing evidence. *Hesidenz v. Carbin,* 354 Pa. Super. 610, 512 A.2d 707 (1986). "An abuse of discretion is more than an error of judgment. It must be a misapplication of the law or an unreasonable exercise of judgment." *Drawbaugh v. Drawbaugh,* 436 Pa. Super. 57, 59, 647 A.2d 240, 241 (1994), quoting *DeNomme v. DeNomme,* 375 Pa. Super. 212, 218, 544 A.2d 63, 66 (1988).

(1) *The Nurturing Parent Doctrine Is Not a Legal Doctrine To Be Applied to Any Case Where a Parent Decides Not To Work As a Result of Having Preschool Children*

The plaintiff's first matter complained of on appeal is a broad statement which need not be addressed by this court. The Superior Court has held that "[w]hen an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues." *In re Estate of Daubert,* 757 A.2d 962, 963 (Pa. Super. 2000). "In other words, a concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all." *Common-*

*wealth v. Dowling,* 778 A.2d 683, 686-87 (Pa. Super. 2001). Further, an analysis of this matter complained of on appeal is not necessary in resolving the ultimate issue in this case. The question is not whether the nurturing parent doctrine applies to all cases, but whether it applies to this case.

*(2) Even if the Nurturing Parent Doctrine Is Applicable to All Cases in Which a Parent Decides To Stay at Home To Take Care of a Preschool Child, It Does Not Apply To This Case Because Mother Testified That She Is Seeking Employment and Desires To Work*

Under the nurturing parent doctrine, an exception is created whereby, in appropriate cases, the earning capacity of a parent who chooses to stay home with young children need not be considered for determining child support. *Hesidenz v. Carbin,* 354 Pa. Super. 610, 616, 512 A.2d 707, 710 (1986). This doctrine becomes problematic, as in this case, where the children being nurtured are not the children of the support order.

There are three factors to consider in order to determine whether a nurturing parent should be expected to seek employment, they are the age and maturity of the child, the availability and adequacy of others who might assist the custodial parent, and the adequacy of financial resources if a custodian parent does not remain in the home. *Doherty v. Doherty,* 859 A.2d 811, 813 (Pa. Super. 2004). Whether or not the nurturing parent doctrine applies to the defendant will be addressed in the next matter complained of on appeal. With regard to this issue,

this court had to generically determine whether the exemption created by the nurturing parent doctrine is waived when the parent undertakes a job search to see if working makes financial sense. This court found this argument to be entirely without merit.

The defendant testified that she has looked for employment but has not had any callbacks and cannot work because she cannot afford childcare. (N.T. 1/31/06. p. 4.) The facts are not, as plaintiff's counsel alleges, that the defendant is seeking employment and desires to work. A more accurate description of the facts in this case is that the defendant explored what her job options are to see if she could afford to work. However, she found that childcare costs would exceed her income, making working a financial impossibility. This court will not compound the mother's problem by denying her the nurturing parent exemption solely because she undertook a job search to see if working made financial sense. If this court accepted the plaintiff's argument, it would be setting the absurd precedent whereby parents would be discouraged from looking for a job or researching what their income and childcare costs would be, because the moment they do, they would become responsible for child support they cannot afford.

### (3) *Mother Should Have Been Attributed an Earning Capacity Equal to Her Experience, Education and Work History in Calculating Her Support Obligation for the Minor Child*

This is the real issue for appeal in this case. The issue is whether this court should have attributed an earning

capacity to the mother or if she is entitled to an exemption from paying support under the nurturing parent doctrine. In order to address this issue, an analysis of the facts of this case under the nurturing parent doctrine must be completed.

As stated above, the nurturing parent doctrine creates an exception in appropriate cases, whereby the earning capacity of a parent who chooses to stay home with young children need not be considered for determining child support. *Hesidenz v. Carbin,* 354 Pa. Super. 610, 616, 512 A.2d 707, 710 (1986). There are three factors to consider in order to determine whether a nurturing parent should be expected to seek employment. They are the age and maturity of the child, the availability and adequacy of others who might assist the custodial parent, and the adequacy of financial resources if a custodian parent does not remain in the home. *Doherty v. Doherty,* 859 A.2d 811, 813 (Pa. Super. 2004).

The facts of this case are clear that the defendant meets the requirement of the first factor of the analysis. The mother is caring for twin girls born May 16, 2005, and who obviously are in need of constant care due to their age.

As to the second factor, the evidence provided was that there were no other family members available to care for the twins if the mother found employment. Plaintiff's counsel is correct in alleging that the maternal grandmother of the twins would live in the vicinity, but there was testimony that she has two jobs and was not available for childcare purposes. The grandmother has a full-time job working in cancer research, as well as a job

in real estate working nights and weekends. (N.T. 10/28/05, p. 10.) Plaintiff's counsel also alleges that the defendant's fiancé has family in the area. The testimony he is referring to states that the fiancé's mother lives in South Philadelphia whereas the defendant lives in Northeast Philadelphia (N.T. 10/28/05, pp. 31-32), which is presumptively not convenient for childcare purposes. Further, even if the fiancé's mother lived close enough to care for the twins while the mother worked, the assertion of plaintiff's counsel overlooks the testimony that the fiancé's mother has had a stroke and is not capable of caring for the twins. (N.T. 10/28/05, p. 35.) Accordingly, the facts of this case are clearly sufficient to meet the second requirement of the analysis of the nurturing parent doctrine.

Applying the facts of this case to the third factor of the analysis also supports a finding that the nurturing parent doctrine should apply. The financial resources of the mother are such that she cannot afford to leave the home to work. The mother is in a position whereby the childcare costs for her two children are greater than what she could potentially earn. Further, if she were to find a job, in addition to the net loss she would suffer from the childcare expenses, the mother would also lose her food stamps, WIC subsidy, and the free health insurance for her and the twins. Under these circumstances, it is apparent to this court that the defendant meets the requirements of the nurturing parent doctrine. However, this case presents some additional issues because the children being nurtured are not the children of the support order.

In cases where the children being nurtured are not the children of the support order, the courts have held that the nurturing parent doctrine still applies assuming certain conditions are met. In *Atkinson v. Atkinson,* the Superior Court was presented with a similar matter; this court was guided by the following language in that opinion: "the issue [is] not whether the mother was caring for her children as opposed to their children, *but whether under the facts of the case what the earning capacity would be.* This is the correct analysis under these facts, particularly since there is no evidence of the mother's earning capacity based on her work record or employability. On this record imputing earning capacity to the mother is a fiction which simply shifts the burden of supporting the wife's child of the first marriage to her second husband, who has no legal obligation to do so." *Atkinson v. Atkinson,* 420 Pa. Super. 146, 148, 616 A.2d 22, 23 (1992). (emphasis added)

This case suggests that in order to determine what the earning capacity would be under the facts of the case, the prior work history and practice of the parent concerning childcare should be considered.[3] Accordingly, in

---

3. The *Atkinson* case and the present matter are distinguishable because in the present matter there is evidence of work history and prior childcare practice, however the factors for consideration remain the same. The *Atkinson* court stated, "The record in this case is totally devoid of any evidence that the mother ever worked, or that her son, who lived most of his life with her before electing to go with his father, did not have the benefit of her full-time nurturing. *Without proof of her income-producing capacity and the prior practice as to the older child, this court has no basis upon which to overrule the judgment of the trial court.*" *Atkinson v. Atkinson,* 420 Pa. Super. 146, 149, 616 A.2d 22, 23 (1992). (emphasis added)

determining an earning capacity for the mother, this court considered the nurturing parent doctrine and its factors, the prior practice of the mother in that she stopped working to care for Kourtney after she was born, and the mother's desire to stay home to care for the twin girls. These are the relevant considerations according to the case law, and viewing all of the considerations together as a whole, they support a determination of a zero earning capacity for the mother.

This court believes that the nurturing parent doctrine applies to the mother, and thus disagrees with the third matter complained of on appeal. As seen above, the mother meets the requirements of the nurturing parent doctrine. The mother has twin girls at home who are under 2 years of age, there are no family members available to care for the children if the mother was working, and the financial resources are such that the mother cannot afford to go to work because the child-care cost and loss of government benefits outweigh her earning potential. This clearly illustrates that the mother would be entitled to the nurturing parent doctrine if the twin girls were the subject of the support order. Since the twin girls are not the subject of the order, this court looked at the additional factors as provided by case law, including the mother's desire to stay home, and the fact that she previously stopped working to care for the child of the support order after she was born. This resulted in the determination that the nurturing parent doctrine applies to the mother and that she does not have an earning capacity under the facts of this case. Further, if this court found the defendant has an earning

capacity, it would go against the precedent that "[i]t has never been the law that a mother who elects to care for her young child is chargeable with voluntary withdrawal from income-producing activity to defeat the right to support her child by a previous marriage." *Atkinson,* at 149, 616 A.2d at 23.

(4) *In Determining Whether Mother's Daycare Expenses for the Children Born of Another Relationship Exceed That of Her Earning Capacity, the Court Should Have Taken Into Consideration the Other Household Income. The Household Income Used To Support the Minor Children of Mother's Current Intact Relationship Exceeds Significantly the Household Income in Father's Household Without Mother Having an Obligation To Support the Child at Issue in This Case*

This matter complained of on appeal is essentially arguing that the mother's new fiancé should bear the burden of supporting Kourtney. In this case, it does not matter where the money used to pay for the childcare for the twin girls comes from. The fiancé currently pays the entire childcare because he works while the mother cares for the girls. Due to the fact that the mother would not make enough money to cover the cost of childcare if she worked, the family would suffer a financial loss if the mother returned to work. This would result in the fiancé paying the difference between the mother's income and the childcare costs, creating an additional expense for him. Accordingly, because the mother

would not be creating any additional take-home pay for the family if she returned to work, a support order for Kourtney would have to come from the fiancé's earnings as well.

Looking at the family as a business in the situation proposed by this matter complained of on appeal illustrates that if plaintiff's argument were accepted, it would not free up any money to pay a support order for Kourtney. As a business, the family would create more income if the mother went to work, but it would not create any more profit because the childcare expense is larger than the income the mother would create working. The increase in income, while providing no profit or benefit to the family, would also disqualify the family for government benefits, further reducing the money available to support the family.

This matter complained of on appeal illustrates that this court's decision that the mother has zero earning capacity was the correct one. Anyway this case is looked at, because the cost of childcare exceeds the earning capacity of the mother, the only way for support to be paid for Kourtney would be to force the mother's fiancé to pay the support, which is something he is not obligated to do.

Based on the foregoing, there was no abuse of discretion by clear and convincing evidence as there is ample evidence to support this court's decision. Accordingly, this court respectfully requests that its decision that the defendant in this matter currently has a zero earning capacity and is entitled to stay home to care for the twin girls be affirmed.