J. A03041/17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| K.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| J.B., SR., | : | |
| | : | |
| | : | |
| Appellant | : | No. 783 MDA 2016 |
| | : | |

Appeal from the Order Entered April 18, 2016
In the Court of Common Pleas of Cumberland County
Domestic Relations at No(s): 00702 S 2011
PACSES No. 545112656

BEFORE: LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 19, 2017**

Appellant, J.B., Sr. ("Father"), appeals from the April 18, 2016 Order, which increased Father's child support obligation upon consideration of the Petition to Modify Support filed by Appellee, K.B. ("Mother"). After careful review, we affirm.

Mother and Father are parents to two children, ages sixteen and nineteen, and have been divorced since 2011. Mother has worked various part-time minimum wage jobs, including hosting at a pizza restaurant and working for a cleaning service for approximately twenty-five hours per week. Father has been in the construction field for over twenty-five years.

In 2011, Father was not making adequate money in construction so he went to a temporary employment agency and obtained employment at a

factory for a wage of approximately $15.00 per hour. After six months of full-time employment, the factory furloughed Father every other week and he collected unemployment during the furlough weeks.

On September 8, 2011, Mother filed a Complaint for Support. On October 24, 2011, the trial court ordered Father to pay a child support obligation of $234.00 per month, including arrears.[1]

In December 2011, Father voluntarily left his employment at the factory to go back to self-employed construction work as a dealer for log homes. At the time, Father believed he had contracts for two or three log homes, but the deals fell through. Father remains a dealer for log homes but he has not sold any over the last few years. Instead, Father sub-contracts for other log home dealers when needed and bills $25.00 per hour for his services.

On September 23, 2014, Mother filed a *pro se* Petition for Modification of an Existing Support Order. On October 20, 2014, after a support conference, the conference officer entered an interim Order that reduced Father's child support obligation to $189.00 per month, including arrears.

Mother filed a *pro se* appeal *de novo.* After a hearing, the Support Master entered a Report and Recommendation increasing Father's child

---

[1] For purposes of calculating arrears, the effective date of the child support Order was August 8, 2011.

support obligation, which the trial court signed and filed on January 5, 2015. Father filed Exceptions.

The trial court remanded the case to the Support Master with the express instruction that the parties bring specific documentation relating to income and expenses. After a hearing, the Support Master entered a new Report and Recommendation increasing Father's child support obligation, which the trial court signed and filed on October 23, 2015. Father once again filed Exceptions.

On April 18, 2016, after hearing oral arguments and considering submitted briefs, the trial court denied Father's Exceptions and made the October 23, 2015 interim court Order final, increasing Father's child support obligation to $433.03 per month, including arrears.

Father timely appealed. Both Father and the trial court complied with Pa.R.A.P. 1925.

Father raises the following issues on appeal:

1. Whether the lower court abused its discretion when it ignored and misapplied the law by holding Father to an artificially high income, considering matters not of record and did not accurately calculating [*sic*] Mother's income available for support.

2. Whether the lower court erred in calculating an earning capacity for Father which ignored his actual earnings and his testimony concerning his available resources from which to pay support.

3. Whether the lower court erred in assigning an earning capacity which was based upon information outside the record and contrary to the testimony of Father and with no evidence

of jobs available with earnings equivalent to or greater than Mother's with no evidence of any available positions or Father's ability to obtain those jobs.

4. Whether the lower court has evidenced such a bias against self-employed persons as to render it incapable of determining Father's available financial resources in calculating child support.

5. Whether the lower court abused its discretion by exercising judgment that is shown by the record to be manifestly unreasonable as well as the product of partiality, prejudice and bias toward Father and by making assumptions that were gender based.

6. Whether the lower court abused its discretion when it found Father willfully failed to seek appropriate employment where there is no evidence of record that there were suitable positions available, and that Father failed to apply for these positions.

7. Whether the lower court abused its discretion when it stated, "The [c]ourt cannot address the question of Defendant's income without looking to the primary reason that Defendant's income is subpar. Defendant voluntarily left a higher paying job and immediately turned to self-employment, without ever attempting to seek out any alternate employment." This statement by the [c]ourt disregards the Master's finding that "Before Father left Grove he had lined up three projects doing general construction work for Bouder Construction. Father expected the three projects to generate income for Bouder Construction for approximately a year."

8. Whether the lower court erred in calculating Mother's income to include child tax credits and earned income tax credits where the Pa.R.C.P. 1910.16-2(f) refers to Child Dependency Exemptions, not child tax credits and the earned income credits. These credits are available to Mother as tax benefits based upon Mother's taxable income status and not Father's. Assigning tax credits as income in these low income cases only serves to artificially inflate total monthly income when calculating the child support obligations of the parents.

Father's Brief at 7-9 (reordered for ease of disposition).

Our standard of review is well settled in child support cases. "Appellate review of support matters is governed by an abuse of discretion standard. When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground." *R.K.J. v. S.P.K.*, 77 A.3d 33, 37 (Pa. Super. 2013) (internal quotation marks and citations omitted). Further, "an abuse of discretion requires proof of more than a mere error of judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality." *Portugal v. Portugal*, 798 A.2d 246, 249 (Pa. Super. 2002) (quotation marks and citation omitted). "The principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses." *Mencer v. Ruch*, 928 A.2d 294, 297 (Pa. Super. 2007) (quotation marks and citation omitted). Finally, "the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests." *Id.* (citation omitted).

Father's first four issues claim that the trial court abused its discretion in assigning Father an earning capacity of $10.00 per hour for forty hours per week, for a total earning capacity of $400.00 per week, without evidence in the record to support that finding. We disagree.

This Court has repeatedly stated, "a person's support obligation is determined primarily by the parties' actual financial resources and their earning capacity. Although a person's actual earnings usually reflect his earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings." ***Woskob v. Woskob***, 843 A.2d 1247, 1251 (Pa. Super. 2004) (citations omitted). The Pennsylvania Support Guidelines state that there "generally will be no effect on the support obligation" if a party voluntarily assumes a lower paying job. Pa.R.C.P. No. 1910.16-2(d)(1). Moreover, if a party has willfully failed to maintain appropriate employment, the trier of fact "may impute to that party an income equal to the party's earning capacity." Pa.R.C.P. No. 1910.16-2(d)(4). "Earning capacity is defined as the amount that a person realistically could earn under the circumstances, considering his age, health, mental and physical condition, training, and earnings history." ***Woskob, supra*** at 1251 (citation omitted); ***see also*** Pa.R.C.P. No. 1910.16-2(d)(4).

Further, this Court has cautioned, "[t]he net income of a defendant as shown on income tax returns is not to be accepted in a support case as the infallible test of his earning capacity. Particularly is this true where the defendant is in business for himself and is allowed substantial business 'expenses,' items of depreciation and sundry other deductions which enable him to live luxuriously before spending his taxable income." ***Murphy v. Murphy***, 599 A.2d 647, 651 (Pa. Super. 1991) (citations omitted).

In the instant case, the trial court opined,

> [Father] testified that his construction company made $31,537 in 2014 in pre-tax income, but after paying taxes and deducting business expenses [Father] claimed $2,612 in adjusted gross income, including income independent from Appellant's business, as reported to the Internal Revenue Service for the year. Appellant did not provide any bills of sale, contracts, or any other documentation to support his income. [Father] further testified that he had no difficulty paying approximately $1,150 per month in personal expenses.

Trial Court Opinion, filed 8/4/16, at 4-5 (footnotes omitted). The trial court "reject[ed] the use of Appellant's income as reported in his tax returns because of the impossibility of Appellant paying $1,150 per month in personal, non-business expenses on an annual income of $2,612[.]" *Id.* at 4. We agree.

After the trial court determined that Father's reported income did not reflect his earning capacity and that Father had willfully failed to maintain appropriate employment, the trial court then considered Father's age, education, training, health, work experience, earnings history, and childcare responsibilities to determine "the amount that [Father] realistically could earn under the circumstances[.]" **Woskob**, supra at 1251 (citation omitted); *see* Trial Court Opinion, filed 4/18/16, at 14-15.

The trial court opined:

> Here, [Father] is 52 years of age. He testified that he was recovering from neck surgery, but did not believe that he was physically unable to work a full-time job. [Father] did not indicate any other physical or mental problems that he experienced which prevented him from working. [Father] testified that he had approximately twenty[-]five years of

experience in the field of general construction, and importantly in 2011 he was able to secure temporary work paying a wage of $15.40 per hour within two to three weeks of applying with a temp agency. The job transitioned into full-time employment at the same wage, which [Father] voluntarily left.

[Father] bills $25.00 per hour for work he performs now. [Father] was clearly sufficiently educated to be able to earn more than the minimum wage, and more than the $10.00 per hour that he was assessed by the Master. Presently, [Father]'s childcare responsibilities extend to two nights of custody of his daughter every two weeks, which does not limit his ability to work full-time. Once he began self-employment, [Father] stopped looking for another source of employment and has not done so in the past three years.

The duty to support a child is absolute. ***Depp v. Holland***, 636 A.2d 204, 206 (Pa. Super. 1994). In awarding child support, the [c]ourt must be cognizant of the purpose of child support, which is to promote the best interests of the child. ***Id.*** Here, the best interests of the child clearly lie with [Father] being assessed with a higher earning capacity[.]

Trial Court Opinion, filed 4/16/16, at 14-15. A review of the record supports the trial court's findings. Accordingly, we find that the trial court did not abuse its discretion when it assigned Father an earning capacity of $400.00 per week.

Father's fifth issue on appeal claims that the trial court abused its discretion by making gender-based assumptions. Father's Brief at 7. Father argues that the trial court "presum[ed] that all self-employed persons are liars and cheats who live high on the hog and are poor church mice when they appear in [c]ourt" and that the trial court "sneer[ed]" at Father but excused Mother's "highly inflated grocery bill" as "statistically-irrelevant." Father's Brief at 22. Father essentially argues that the trial court favored

Mother but fails to explain exactly how any of the trial court's findings were gender-based. This argument lacks merit.

The trial court found that Father's testimony regarding his monthly income was not credible. Trial Court Opinion, filed 8/4/16, at 6. In turn, the trial court found that there was "no credible evidence of any significant inaccuracies in [Mother]'s monthly bills." Trial Court Opinion, filed 4/18/16, at 8. The trial court noted that Mother's grocery bill "may have been inflated by a statistically-irrelevant amount through inclusion of food expenses for [Mother]'s emancipated child" but found that it was irrelevant because it was not significant enough to require a deviation from the support guidelines. *Id.* at 8 n.19; *see* Pa.R.C.P. No. 1910.16-5(b). A review of the record fails to reveal any gender-based assumptions, but rather reveals credibility determinations. Accordingly, we find no abuse of discretion.

Father's sixth issue on appeal avers that the trial court's finding that Father willfully failed to seek appropriate employment is not supported by the record. Father's Brief at 8. Father argues that there was no evidence "concerning job availability or earnings available following Father's move from [the factory] back to self-employment." Father's Brief at 21.

As discussed above, Rule 1910.16-2 allows the trier of fact to assign an income equal to the party's earning capacity if the trier of fact determines that a party has willfully failed to maintain appropriate employment. Pa.R.C.P. No. 1910.16-2(d)(4). The Rule expounds, "[d]etermination of

what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment." *Id.*

In the instant case, the trial court considered Father's choice of jobs, working hours and conditions, and efforts to find employment. The trial court found that Father was previously able to secure a higher paying factory job within a few weeks, that the primary reason Father left his factory job was because he disliked working with others, that Father has not looked for another source of employment in the past five years, and that Father is able to work full time because his childcare responsibilities extend to two nights of custody of his daughter every two weeks. *See* Trial Court Opinion, filed 4/16/16, at 14-15; Trial Court Opinion, filed 8/4/16, at 6 n.8. A review of the record supports these findings. Accordingly, we find no abuse of discretion.

Father's seventh issue on appeal claims that the trial court abused its discretion when it made a statement that Father "voluntarily left a higher paying job and immediately turned to self-employment, without ever attempting to seek out any alternative employment" without considering Father's testimony that he had secured three construction projects prior to leaving his job. Father's Brief at 14.

The trial court opined:

> Appellant asserts that this [c]ourt abused its discretion by disregarding Appellant's act of securing three general construction projects before becoming self-employed. The [c]ourt did consider that, as well as the fact that two of those projects were cancelled. However, more weight was assigned to the fact that [Father]'s business is not improving, and that the test for child support involves what [Father]'s earning capacity is, not what is actual earnings are. [Father] himself demonstrated that he has the capacity to earn significantly more than he currently is, but chooses not to.

Trial Court Opinion, filed 8/4/16, at 8.

Because the trial court **did** consider the fact that Father secured numerous construction projects prior to voluntarily leaving his factory job, we find that Father's argument lacks merit. Thus, we find no abuse of discretion.

Father's last issue on appeal is "whether the [trial court] erred in calculating Mother's income to include child tax credits and earned income tax credits where the Pa.R.C.P. 1910.16-2(f) refers to Child Dependency Exceptions, not child tax credits and the earned income credits." Father's Brief at 26. Father argues that the trial court should not have considered the Federal Child Tax Credit ("CTC") and Federal Earned Income Credit ("EIC") in calculating Mother's income. However, Father fails to use specific numbers or explain exactly how the court arrived at an incorrect income calculation.

We agree with Father that the trial court incorrectly cited Rule 1910.16-2(f) when explaining its decision to include the CTC in Mother's income calculation, as Rule 1910.16-2(f) allows for the consideration of a

- 11 -

Dependency Tax Exemption in calculating income, rather than the consideration of a CTC.  **See** Pa.R.C.P. No. 1910.16-2(f).  However, we find this to be harmless error.

Rule 1910.16-2 states that the amount of child support awarded should be based upon the parties' monthly net income, and generally defines "income" as including "income from any source[.]"  Pa.R.C.P. No. 1910.16-2(a); **see also** 23 Pa.C.S. § 4302.  Rule 1910.16-2 specifically defines "income" as including, *inter alia*, "other entitlements to money or lump sum awards, without regard to source, including lottery winnings, income tax refunds, insurance compensation or settlements; awards and verdicts; and any form of payment due to and collectible by an individual regardless of source."  Pa.R.C.P. No. 1910.16-2(a)(8).

Rule 1910.16-2 also notes that "[t]he trial court has discretion to determine the most appropriate method for imputing lump sum awards as income for purposes of establishing or modifying the party's support obligation.  These awards may be annualized or they may be averaged over a shorter or longer period of time depending on the circumstances of the case."  **Id.**

In consideration of EIC, the trial court opined:

The [EIC] reduces a party's tax obligation, and may result in a tax refund.  Income tax refunds may properly be considered for support purposes.  The trial court has the authority to determine how a lump sum payment such as an income tax refund will be assessed, specifically whether it will be annualized or averaged over a shorter period.  There was no testimony or evidence

presented that [Mother] would not be entitled to a tax refund due to her low income. The tax refund would incorporate the [EIC]. Here, the Master applied the [EIC], as merely part of a potential tax refund for [Mother], on a monthly basis.

Trial Court Opinion, filed 4/18/16, at 17-18 (citations omitted). We agree.

Moreover, we apply the same logic to the trial court's consideration of the CTC, which is also a tax credit that may result in a tax refund. Thus, we find no abuse of discretion.

The trial court did not abuse its discretion when it imputed an earned income capacity to Father and increased Father's child support obligation.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/19/2017